OPINION
Defendant-appellant Derek M. Lankford appeals from the decision of the Belmont County Common Pleas Court which denied his motion to withdraw his guilty plea. For the subsequent reasons, the trial court's judgment is affirmed.
On June 13, 1991, Charles Coleman, Jason Richardson, Jermaine Culbreath, Rodriguez Williams and appellant decided to ensure that Vicki Redmond be kept quiet about what she knew of the group's prior criminal activities. Ms. Redmond was taken from her apartment in Martins Ferry and transported to a secluded location in Pease Township where she was repeatedly beaten, stabbed and kicked. Then, Ms. Redmond's unconscious body was thrown into a pond. The group left the scene and returned with flammable liquids with which they set Ms. Redmond on fire and burned her dying body. Some of the offenders came forward and confessed, implicating appellant. After he was questioned by police on June 27, 1991, appellant confessed to his part in the murder.
Culbreath testified against appellant in front of the grand jury. On July 18, 1991, appellant was indicted for aggravated murder in violation of R.C. 2903.01 (A). The indictment contained two death specifications: R.C. 2929.04 (A) (3), killing to escape detection for another offense and R.C. 2929.04 (A) (8), killing to prevent the victim's testimony in a criminal proceeding. Extensive discovery was conducted as appellant prepared for his trial. In the meantime, Williams and Culbreath testified for the state in the trial of Coleman who was called the "principal defendant, the ring leader, and the mastermind."
On February 26, 1992, appellant pled guilty to aggravated murder and the accompanying capital specification of R.C. 2929.04
(A) (3). The prosecution amended the indictment, deleting the death specification of R.C. 2929.04 (A) (8). Also, the prosecution agreed to recommend a life sentence for appellant instead of a death sentence. At the plea hearing in front of a three judge panel, the court engaged appellant in a Crim.R. 11 plea colloquy. The plea agreement stated that the maximum sentence was death. The court explained to appellant that it was not bound by the prosecution's recommendation of life. A mitigation hearing was held on March 5, 1992, after which the court sentenced appellant to life in prison with parole eligibility after serving thirty years of imprisonment.
More than four years later, on July 5, 1996, appellant filed a motion to withdraw his guilty plea. He claimed that, before he pled guilty, his attorneys had informed him that he would be eligible for good time credit. Thus, he thought his maximum sentence was life with parole eligibility after thirty years minus good time credit which could result in parole eligibility after twenty years. Attached to appellant's motion was a letter from Attorney Terry Easterwood dated August 28, 1995, which stated:
 "You may remember that there was some question in my mind whether or not you would be entitled to any good time under the statute. I believe Attorney Olivito and myself called the Administrators at Orient [prison], Ohio, and explained your situation and the plea arrangement proposed and Mr. Olivito and I accurately described to you the advice that we were given by the Administrator at Orient which was that you would be entitled to good time even though the Statute reads `30 full years'
 The reason we called Orient was because we could find no Court cases that indicated any particular interpretation of that statute although the language would appear to speak for itself.
 I do believe that you entered your plea with the understanding that you would be allowed good time and that was the advice that we received from Orient although it seemed to contradict the language of the statute."
On September 11, 1996, the trial court overruled appellant's motion to withdraw his guilty plea. Appellant filed timely notice of appeal, asserting the following assignment of error:
 "THE COURT ERRED IN OVERRULING THE MOTION OF THE APPELLANT TO WITHDRAW HIS GUILTY PLEA WHERE THAT PLEA WAS INDUCED BY AND THE RESULT OF AN ERRONEOUS REPRESENTATION OF LAW MADE TO THE DEFENDANT AT THE TIME OF THE PLEA BY DEFENSE COUNSEL WHICH MISREPRESENTATION WAS NOT CORRECTED BY THE COURT OR THE PROSECUTING ATTORNEY THEREBY RENDERING HIS PLEA INVOLUNTARY AND UNKNOWING AND, CONSEQUENTLY, VOID IN VIOLATION OF CRIMINAL RULE 11 AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT."
Appellant claims that he believed that he would be eligible for good time credit. He contends that the court and the prosecution should have corrected his erroneous belief after Attorney Olivito, in his closing arguments in mitigation, stated:
 "And I have laid on the bench before each chair the transcripts of the sentencing hearings [of appellant's co-defendants], and I have done that for a reason. I'd like to introduce them into evidence if the Courts will accept them. And the reason is, each one of those individuals that has been sentenced in Belmont County has received a sentence of less than death, and all of those defendants, with the exception of C. R. Coleman have the opportunity to have good time marked against their sentences. * * * But every one of those defendants has the opportunity, with the exception of Mr. Coleman to get good time against his sentence. And all of them, if Derek were to get life with parole opportunity after thirty years, all of those defendants will have been on the street years before Derek." (Mitigation Tr. 66-67)
Contrary to appellant's contention, the court and the prosecution were not made aware of appellant's alleged belief that he was eligible for good time credit. The statements by Attorney Olivito do not demonstrate that appellant thought he could earn credit. The above excerpt merely requests that the court impose a life sentence with parole eligibility in twenty years instead of in thirty years. Attorney Olivito acknowledged that Coleman is ineligible for good time. Coleman was convicted of aggravated murder with a death specification; the same crime and specification to which appellant pled guilty. The available sentencing options for this offense are "death, life imprisonment with parole eligibility after serving twenty full years of imprisonment, or life imprisonment after serving thirty full years of imprisonment." R.C. 2929.03 (C) (2). The mandate of twenty or thirty "full" years means good time credit is not available.
The other defendants can earn good time credit because the offenses to which they pled guilty were different. For instance, Williams pled guilty to complicity to murder and was sentenced fifteen years to life. It appears that Richardson and Culbreath pled guilty to aggravated murder without death specifications and were sentenced to life with parole eligibility after twenty years. Pursuant to R.C. 2929.03 (C) (1), their sentences were not for twenty "full" years. Thus, Attorney Olivito's statement about Williams, Richardson and Culbreath being eligible for good time credit did not demonstrate that appellant mistakenly thought that he could earn good time credit. In fact, Attorney Olivito's statements suggest that he was aware that appellant was not eligible to earn good time.
Appellant argues that the court erred by not allowing him to withdraw his guilty plea which was not voluntary and knowing due to his belief that he was eligible for good time credit. As such, appellant complains that his plea was induced by a "grave misunderstanding." In his motion to withdraw, appellant also argued ineffective assistance of counsel due to the erroneous advice of counsel.
To prevail on his ineffective assistance of counsel claim, appellant must show that counsel's performance was deficient and that but for the deficiency there is a reasonable probability that appellant would not have pled guilty. Hill v. Lockhart (1985),474 U.S. 52, 59, applying Strickland v. Washington (1984),466 U.S. 668. Pursuant to Crim.R. 32.1, a post-sentence motion to withdraw a guilty plea may be granted to correct a manifest injustice. It is the defendant who has the burden to prove such injustice. State v. Smith (1977), 49 Ohio St.2d 261, 264. The determination of whether the defendant carried his burden is left to the sound discretion of the trial court. Id. In accordance, the court's decision will not be disturbed absent an abuse of discretion. State v. Stumpf (1987), 32 Ohio St.3d 95, 104. A court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. State v. Adams (1980),62 Ohio St.2d 151, 157.
The language of the good time credit statute, R.C. 2967.19
(B), cannot be any more clear; it states that appellant "is not entitled to any diminution of the twenty full years or thirty full years that he is required to serve before parole eligibility." Attorney Easterwood's letter is written more than three years after he allegedly called the prison and asked about good time. If Attorney Easterwood felt that the language of the statute "would appear to speak for itself" and that the prison's advice "seemed to contradict the language of the statute," then it seems unlikely that he would have only told appellant about what the prison administrators said. It is more likely that the attorney told appellant that good time credit does not appear to apply but that the prison said that it does.
Moreover, it is curious that appellant did not file his plea withdrawal motion until four years and four months after he was sentenced. This long and unexplained delay reflects adversely upon appellant's credibility. See Smith, supra at 264; State v.Goodballett (Sept. 1, 1998), Columbiana App. No. 97-CO-17, unreported. "[T]he good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by that [the trial] court." Id.
Even if we believed appellant's assertion that he was not aware of the possibility that good time was inapplicable to him, the existence of prejudice is lacking. There is no indication that appellant would not have pled guilty if he knew that he would be ineligible for good time credit. Had appellant gone to trial, the state would have presented appellant's taped confession and the testimony of three co-defendants who were willing to cooperate with the state. Appellant was aware that the maximum sentence he faced was death. By pleading guilty he increased his chances of receiving a life sentence with parole eligibility.
Appellant was twenty years old when he was sentenced. Obviously, he was hoping for a life sentence with a chance of parole after twenty years, but the three judge panel thought that such a sentence would demean the life of Ms. Redmond. It seems unlikely and appellant does not claim that he would have chosen to chance a death sentence if he knew that good time was not a possibility. Because good time credit estimations are mere speculation about sentence possibilities, appellant's misapplication of the good time credit statute does not result in an involuntary, unknowing, or manifestly unjust plea. See Statev. Xie (1992), 62 Ohio St.3d 521. A post-sentence withdrawal motion is only granted in extraordinary instances. Smith, supra
at 269. Appellant has failed to carry his burden of showing a manifest injustice or prejudicially deficient performance by his counsel. Appellant's assignment of error does not warrant relief.
For the foregoing reasons, the decision of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE