Troy Timmons appeals his conviction for violating R.C.2919.25(B), domestic violence, and assigns the following errors:
ASSIGNMENT OF ERROR NO. 1:
 DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT ACCEPTED DEFENDANT'S GUILTY PLEA?
 ASSIGNMENT OF ERROR NO. 2:
 WHAT IS THE PROPER STANDARD OF REVIEW FOR A VIOLATION OF CRIMINAL RULE 11?
Appellant was charged with domestic violence after his girlfriend, with whom he resided, filed an affidavit alleging that he had threatened to kill her and had struck her in the face while she was a passenger in a car he was driving. The police officer who responded to her call stated in his report that the victim had suffered severe facial injuries. Appellant was later arrested and jailed. At his arraignment the judge read the complaint and affidavit in support of the complaint and then the following exchange took place:
JUDGE: Okay, questions you got?
DEFENDANT: No questions.
 JUDGE: Misdemeanor of the first degree, six months in jail a $1000.00 fine maximum penalty. Domestic violence is an offense of violence, have any offenses of violence in the future and it becomes a felony understand that? Okay. What questions do you have for me?
DEFENDANT: No questions.
 JUDGE: Okay. Understand what you've been charged with?
 DEFENDANT: Yes, I do. [Discussion of a temporary restraining order]
JUDGE: How do you want to plead?
DEFENDANT: I'm guilty of the charges.
 JUDGE: You want to plead guilty? You see that form there in the middle? Can you sign that?
DEFENDANT: Just the bottom here?
 JUDGE: Uh-huh. That form there that you have explains the rights that you waive when you plead guilty, like the right to have a trial and to have a lawyer and confront witnesses and those very important items.
At that point the judge turned to the victim and asked her about her injuries. A witness advocate entered the courtroom and asked the trial judge if she could talk with the victim for a few minutes. With the judge's permission, she took the victim outside the courtroom and the following exchange took place in the courtroom:
 JUDGE * * * Ill never forget this. I went up to a door probably it was about 1:00 in the morning a long time ago, it was early in 1980 probably and I'll never forget this little girl and this little girl looked up to me and said he killed my mommy. That guy's name was Timmons too. And it was the same thing. Domestic thing. This guy hired somebody to shotgun his wife and he did.
DEFENDANT: That's my uncle.
JUDGE: And.
 DEFENDANT: That don't have nothing to do with my case I'm sorry to say anything about it but I don't want to hear nothing about it I'm sorry.
 JUDGE: But that's exactly how it happens. Petty stuff that gets out of control. Somebody loses their temper.
 DEFENDANT: That's exactly what happened I lost my temper.
* * *
The trial court then sentenced appellant. Immediately after the sentencing, the trial court informed appellant of a second pending charge of domestic violence involving the same victim. Appellant pled not guilty to the second charge. Approximately three weeks later, he filed a motion to withdraw his guilty plea to the first complaint. After a hearing on the motion, the trial court denied it.
The transcript of a "Rights Tape" has been included in the record transmitted to this court. Pursuant to App.R. 9(E), we ordered the trial court to clarify the record regarding whether appellant was present when the tape was played. The trial court supplemented the record with the statement that appellant was present when the tape was played and that the tape was played prior to appellant's guilty plea.
In his first assignment of error, appellant argues that the trial court erred in accepting his guilty plea. Appellant alleges that he was not orally informed of his right to remain silent, his right to compulsory process, his right to have the appellee prove his guilt beyond a reasonable doubt and was not adequately informed of his rights to counsel, a jury trial and to confront witnesses.
A trial court's acceptance of a guilty plea must be affirmed if the trial court substantially complies with the requirements of Crim.R. 11. State v. Stewart (1977), 51 Ohio St.2d 86. Substantial compliance means "under the totality of the circumstances the defendant objectively understands the implications of his plea and the rights he is waiving." State v.Carter (1979), 60 Ohio St.2d 34, 38, certiorari denied (1980),445 U.S. 953; State v. Nero (1990) 56 Ohio St.3d 106, 108, citingStewart. The portion of Crim.R. 11 at issue here is division (E),[1] which states:
 In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest and not guilty.
 The counsel provisions of Crim.R. 44(B) and (C) apply to division (E) of this rule.
In order to comply with Crim.R. 11(E) the trial court must engage the defendant "in a meaningful dialogue." State v. Newman (Mar. 27, 1998), Scioto App. Nos. 97CA2507 97CA2525, unreported. The trial court must also inform the defendant that he or she is waiving the privilege against self-incrimination, the right to a jury trial, the right to confront accusers, Boykin v. Alabama
(1969), 395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709, State v.Ballard (1981), 66 Ohio St.2d 473, and the right to compulsory process, id. at 477. See, also Chiaverini, supra; Bellbrook v.Joefreda (Feb. 19, 1999), Greene App. No. 98CA0063, unreported;State v. Cady (Apr. 5, 1999), Warren App. No. CA97-09-102, unreported. Because these are constitutional rights, the record must affirmatively demonstrate that any waiver was both intelligent and voluntary. Boykin. The burden of proof is on the state to demonstrate a valid waiver of these rights. Id. But see,State v. Shipley (Dec. 22, 1994), Pickaway App. No. 94CA02 (failure of appellant to invoke procedure of App.R. 9 when proceedings are not recorded prevents us from reversing guilty plea).
We recognize that Crim.R. 11 (E) requirements are less stringent than Crim.R. 11 (C) requirements. Newman, supra.
However, the trial court did not even mention that appellant would be waiving his right to compulsory process on the "Rights Tape" and, prior to taking his guilty plea, failed to do anything more than mention his Boykin and Ballard rights. In the "Rights Tape," the trial court seemed to combine the rights to confront his accusers and to compulsory process by saying that an accused has a "right to confront your witnesses." This is not an accurate description of either right and may serve only to confuse any other explanation of these rights. The trial court did not ensure that appellant had listened to or understood the tape. Further, the written waiver appellant signed, absent a discussion of the constitutional rights he was waiving, does not satisfy the requirements of Crim.R. 11(E) or Ballard and does not ensure that his guilty plea was knowing, voluntary and intelligent. SeeShipley, supra, citing State v. Luhrs (1990), 69 Ohio App.3d 731,735.
Crim.R. 11(E) specifically provides that "[t]he counsel provisions of Crim.R. 44(B) and (C) apply * * *." Crim.R. 44 provides in part:
(B) Counsel in petty offenses.
 Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.
(C) Waiver of counsel.
 Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in [Crim.R.] 22. In addition, in serious offense cases, the waiver shall be in writing.
While the trial court adequately explained the right to counsel through the "Rights Tape" and the "Rights Form," the trial court did not ensure that appellant knowingly waived the right to counsel because there is no indication in the record that appellant listened to and understood the tape or read and understood the form. Thus, the trial court did not ensure that the appellant knowingly and voluntarily waived his right to counsel.
We sustain appellant's first assignment of error because the trial court did not substantially comply with Crim.R. 11.
In his second assignment of error appellant argues that the trial court erred in denying his motion to withdraw his guilty plea because the trial court's violations of Crim.R. 11 and the judge's comments about an infamous crime involving appellant's family constitute the manifest injustice necessary to withdraw his guilty plea.
Pursuant to Crim.R. 32.1, a trial court may grant a post-sentence motion to withdraw a guilty plea only to correct manifest injustice. This standard permits a defendant to withdraw his guilty plea only in extraordinary cases. State v. Smith
(1977), 49 Ohio St.2d 261. Thus, a trial court may not grant a post-sentence motion to withdraw a guilty plea unless the defendant establishes that manifest injustice will result if the plea is allowed to stand. State v. Xie (1992), 62 Ohio St.3d 521,525; Smith, paragraph one of the syllabus. The defendant who seeks to withdraw a guilty plea has the burden of proof to show manifest injustice. Smith; State v. Nathan (1995), 99 Ohio App.3d 722,725.
In cases where a trial court has failed to inform a defendant of a Ballard right, such as the right to compulsory process, before a guilty plea, the pleas themselves are constitutionally infirm, Ballard at 477-478, and as such, the manifest injustice required by Crim.R. 32.1 for a post-sentence withdrawal of a guilty plea is present. State v. Shinkle (Aug, 19, 1998), Scioto App. No. 98CA2560, unreported. See, also, State v. Shields
(1997), 119 Ohio App.3d 807, 813, citing Parma v. Peyatt (Apr. 25, 1996), Cuyahoga App. No. 68997, unreported (trial court's total omission of the defendant's privilege against self-incrimination during Crim.R. 11(E) plea colloquy renders plea fatally ineffective requiring reversal). Since the trial court failed to inform appellant of his right to compulsory process and failed to ensure that appellant understood its explanation of his other Ballard rights, allowing his guilty plea to stand would result in manifest injustice. Accordingly, we sustain his second assignment of error.
Having sustained both of appellant's assignments of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND REMANDED and Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment and Opinion.
For the Court
 BY: ________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Appellant was charged with a violation of R.C. 2919.25, a misdemeanor of the first degree. See R.C. 2919.25. The maximum prison term that can be imposed for a first degree misdemeanor is six months. R.C. 2929.21(B). crim.R. 2 defines "serious offense" as "any felony or misdemeanor for which the penalty prescribed by law includes confinement for more than six months" and defines a "petty offense" as "a misdemeanor other than a serious offense." Therefore a violation of R.C. 2919.25 is a petty offense. Statev. Jones (Oct. 18, 1996), Trumbull App. No. 96-T-5432, unreported; Parma v. Peyatt (Apr. 25, 1996), cuyahoga 68997, unreported, see, also Toledo v. Chiaverini (1983), 11 Ohio App.3d 43
(misdemeanors having a penalty of six months or less are considered "petty offense" pursuant to Crim.R. 2 and 11(E)).