Appellant, Joshua J. Zeffer, appeals his conviction and sentence in the Summit County Court of Common Pleas. We affirm.
 I.
On the night of August 7, 1999, Mr. Zeffer, accompanied by two friends, was traveling on South Main Street in Coventry Township, Summit County, Ohio. Mr. Zeffer's blood alcohol content was point eleven. He was driving the vehicle. The weather was rainy and the roads were slick. Mr. Zeffer swerved left of center and collided with a van carrying three persons, all three were injured. Christal Beckler died at Akron Memorial Hospital the following day.
On August 19, 1999, Mr. Zeffer was indicted by the Summit County Grand Jury on eight counts: (1) aggravated vehicular homicide of Mrs. Beckler, in violation of R.C. 2903.06; (2) involuntary manslaughter of Mrs. Beckler, in violation of R.C. 2903.04(B); (3) aggravated vehicular assault of Denise Schnur, who was in the van, in violation of R.C. 2903.08; (4) aggravated vehicular assault of Danielle Lukacko, who was in the van, in violation of R.C. 2903.08; (5) aggravated vehicular assault of Jeff Franjesevic, who was a passenger in the car, in violation of R.C.2903.08; (6) driving while under the influence of drugs or alcohol, in violation of R.C. 4511.19(A)(1); (7) driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(2) and (4); and (8) failing to travel on the right-hand side of the roadway, in violation of R.C. 4511.25. On September 2, 1999, a supplemental indictment was filed charging Mr. Zeffer with one count of aggravated vehicular assault of Donald Fosselman, a passenger in the car, in violation of R.C. 2903.08
(hereinafter "count nine"). On October 12, 1999, Mr. Zeffer changed his plea of not guilty to guilty in exchange for the dismissal of the aggravated vehicular homicide charge and the driving under the influence of drugs or alcohol charge. In a journal entry dated October 14, 1999, the trial court accepted Mr. Zeffer's plea of guilty and found Mr. Zeffer guilty of the remaining counts. At the time of his plea, Mr. Zeffer's attorney had not yet received a copy of the Summit County Medical Examiner's report concerning the cause of Mrs. Beckler's death. Moreover, Mr. Zeffer's attorney had received anonymous information that indicated that Mrs. Beckler's death was caused by negligent medical treatment; namely, the improper placement of the endotracheal tube during intubation.
Mr. Zeffer came before the trial court for a sentencing hearing on November 9, 1999. In an entry journalized on November 12, 1999, the trial court sentenced Mr. Zeffer to five years imprisonment for involuntary manslaughter, eighteen months imprisonment for each of the four counts of aggravated vehicular assault, six months in jail and a $1000 dollar fine for driving while under the influence of alcohol, and a $100 dollar fine for failing to travel on the right-hand side of the roadway. Mr. Zeffer filed a notice of appeal on December 10, 1999. This appeal was assigned appellate case number 19893. Mr. Zeffer challenged his sentence on appeal.
On November 17, 1999, Mr. Zeffer's attorney received and reviewed the Summit County Medical Examiner's report. Listed among the final anatomic diagnoses was anoxic encephalopathy, indicating that Mrs. Beckler's brain had been deprived of oxygen. Mr. Zeffer theorized that, due to the improper intubation, Mrs. Beckler's airway was obstructed for a period of time sufficient to cause brain injury and possibly death. Accordingly, on December 10, 1999, Mr. Zeffer filed a motion to withdraw his guilty plea or for a new trial. After an evidentiary hearing on January 25, 2000, the trial court denied these motions in an order journalized on February 7, 2000. Mr. Zeffer appealed the trial court's decision in appellate case number 19963. Mr. Zeffer's appeals were consolidated by this court and will be addressed jointly herein.
 II.
Mr. Zeffer asserts five assignments of error. We will address each in due course, consolidating his first three assignments of error to facilitate review.
 A. Fourth Assignment of Error THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT ZEFFER'S MOTION TO WITHDRAW HIS GUILTY PLEA TO INVOLUNTARY MANSLAUGHTER.
Mr. Zeffer asserts that the trial court abused its discretion in failing to allow him to withdraw his guilty plea after he was sentenced. He asserts that he must be allowed to withdraw his guilty plea to avoid manifest injustice because, due to the misplacement of the endotracheal tube, his actions were not the proximate cause of the death of Mrs. Beckler. We disagree.
"A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." State v. Smith (1977), 49 Ohio St.2d 261, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
"A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "After a defendant has been sentenced, a court may permit withdrawal of a plea only to correct a manifest injustice." State v. Caraballo (1985), 17 Ohio St.3d 66,67. The defendant has the burden of establishing such manifest injustice. Smith, 49 Ohio St.2d at paragraph one of the syllabus. "The logic behind this precept is to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe." Caraballo,17 Ohio St.3d at 67. Moreover, a defendant is not entitled to withdraw his guilty plea simply because he miscalculates the strength of the state's case when making his plea. State v. Piacella (1971), 27 Ohio St.2d 92, 94.
In the instant case, Mr. Zeffer adduced evidence at the hearing from Deborah Kungle, a registered nurse. She testified that, if the endotracheal tube was wrongly placed in the passage to the stomach rather than to the lungs, one could suffocate. She also interpreted the records concerning Mrs. Beckler's care at the scene and upon her arrival at the hospital. The records showed that, at one point at the scene, Mrs. Beckler had been improperly intubated with the endotracheal tube entering her stomach, but that by the time she reached the hospital, the tube had been reinserted. The reinsertion, although not perfect, had provided ventilation to her right lung. This course of events was corroborated by the state's witness, Dr. Marvin S. Platt, Summit County Medical Examiner. He testified that the record of Mrs. Beckler's treatment at the scene of the accident showed three attempts to intubate her. On the first attempt, the endotracheal tube would not pass into the larynx. On the second attempt, the endotracheal tube went into the esophagus. The third attempt was successful, although it only ventilated her right lung. This course of events was further corroborated by Mrs. Beckler's medical records from Akron General Medical Center. During the intubation process, Mrs. Beckler was ventilated with a bag. Accordingly, the evidence adduced at the hearing did not show that the improper insertion of the endotracheal tube caused Mrs. Beckler's brain to die from lack of oxygen, but rather, that the tube was improperly placed and then that its placement was corrected.
On the autopsy report, the primary cause of death listed is trauma to Mrs. Beckler's brain including subdural hematoma, subarachnoid hemorrhage, cerebral edema with uncal and cerebellar tonsillar herniation, and anoxic encephalopathy. The record indicates that Mrs. Beckler had lost approximately one-fifth of her blood volume into her peritoneal cavity and was in shock. Testimony indicated that such blood loss coupled with the intercranial bleeding which Mrs. Beckler was experiencing due to the accident would cause lack of blood flow to and within the brain, causing oxygen starvation in her brain tissue and resulting in anoxic encephalopathy. Such determinations are, however, for the trial court.
Accordingly, upon thorough review of the record, we cannot conclude that the trial court abused its discretion in finding that Mr. Zeffer had failed to show manifest injustice would result if he was not permitted to withdraw his guilty plea.[1] Mr. Zeffer's fourth assignment of error is overruled.
 B. Fifth Assignment of Error THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT ZEFFER'S MOTION FOR A NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE AS TO THE OFFENSE OF INVOLUNTARY MANSLAUGHTER.
Mr. Zeffer argues that the trial court erred in denying his motion for a new trial based upon newly discovered evidence pursuant to Crim.R. 33(A)(6). We disagree.
"[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof."State ex rel. Keenan v. Calabrese (1994), 69 Ohio St.3d 176, 179.
Although the issues of whether a defendant may move for a new trial after pleading guilty was not raised at trial, the issue has been briefed on appeal and we find it dispositive. Crim.R. 33 specifies that it is to be used to gain a "new trial." Hence, by its terms Crim.R. 33 applies only in instances where the defendant has once been tried. Akron v.Darulis (Jan. 10, 1996), Summit App. No. 17246, unreported, at 2; accordState v. Carter (Feb. 25, 2000), Pike App. No. 99CA636, unreported, 2000 Ohio App. LEXIS 783, at *7; State v. Mootispaw (Nov. 27, 1995), Fayette App. No. CA95-03-008, unreported, 1995 Ohio App. LEXIS 5171, at *2. Furthermore, were we to allow one to move for a new trial in the alternative of moving to withdraw one's guilty plea, a defendant could circumvent the more stringent standard set forth in Crim.R. 32.1 simply by moving for a "new trial" under Crim.R. 33. Accordingly, we conclude that the trial court did not err in overruling Mr. Zeffer's motion for new trial. Mr. Zeffer's fifth assignment of error is overruled.
 C. First Assignment of Error THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN IMPOSING GREATER THAN THE MINIMUM SENTENCES ON EACH COUNT OF CONVICTION, SAID SENTENCES BEING CONTRARY TO LAW AND NOT SUPPORTED BY EVIDENCE IN THE RECORD, AND THE TRIAL COURT HAVING FAILED TO MAKE THE REQUISITE FINDINGS TO SUPPORT THE SAME.
 Second Assignment of Error THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN IMPOSING THE MAXIMUM PRISON TERMS ON ALL COUNTS OF CONVICTION, SAID SENTENCES BEING CONTRARY TO LAW AND NOT SUPPORTED BY EVIDENCE IN THE RECORD, AND THE TRIAL COURT HAVING FAILED TO MAKE THE REQUISITE FINDINGS TO SUPPORT THE SAME.
 Third Assignment of Error THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN IMPOSING CONSECUTIVE SENTENCES ON COUNTS TWO, THREE, FOUR, FIVE AND NINE, SAID SENTENCES BEING CONTRARY TO LAW AND NOT SUPPORTED BY EVIDENCE IN THE RECORD, AND THE TRIAL COURT HAVING FAILED TO MAKE THE REQUISITE FINDINGS TO SUPPORT THE SAME.
Mr. Zeffer argues that the trial court erred in imposing greater than the minimum sentence, in imposing the maximum sentence, and in ordering the sentences to be served consecutively without the statutorily required findings. Further, he avers that his sentence was not supported by evidence in the record. We disagree.
Our standard of review is controlled by R.C. 2953.08(G)(1), requiring us to determine if the trial court clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is that "`which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Cincinnati BarAssn. v. Massengale (1991), 58 Ohio St.3d 121, 122, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 1. Sentence that Exceeds the Minimum
R.C. 2929.14 governs the imposition of prison terms for felony convictions, stating, as relevant to a sentence which exceeds the minimum statutory sentence:
 (B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The Ohio Supreme Court has interpreted this statute to require that
 unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.
State v. Edmonson (1999), 86 Ohio St.3d 324, 326. However, "R.C.2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis original.) Id.
At the sentencing hearing, the trial court found that "consecutive prison sentences in this case are necessary to protect the public[.]" Further, the trial court stated that "consecutive prison sentences in this case are necessary to protect the public considering the fact, Mr. Zeffer, you engaged in this very same conduct before and did not learn[.]" The trial court also concluded that "the concurrent term would in no way adequately reflect the serious nature of this conduct" and that not "even the maximum sentence in this matter is proportionate to the harm you caused[.]" Although the trial court stated these findings in regard to consecutive sentences and imposing the maximum sentence, we conclude that they apply equally to exceeding the minimum sentence as the trial court's analysis in imposing consecutive or maximum sentences clearly must be based on its decision to exceed the minimum sentence. Moreover, although pursuant to R.C. 2929.14(B) the trial court must only make one of the enumerated findings and note that it engaged in the analysis of whether the minimum sentence would adequately protect the public or demean the seriousness of the offender's conduct, the trial court stated the reasons for its findings — Mr. Zeffer's past conduct of driving drunk and being involved in an accident in which one of the passengers was ejected from the vehicle. As the appropriate finding was made, we find no error with the trial court's decision to exceed the statutory minimum.
 2. Maximum Sentence
If a trial court resolves to impose the maximum sentence, the trial court must make a finding that the offender "`committed [one of] the worst forms of the offense, * * * pose[s] the greatest likelihood of committing future crimes,'" or falls within one of the other enumerated categories. Edmonson, 86 Ohio St.3d at 328, quoting R.C. 2929.14(C). Further, the trial court must "`give its reasons for selecting the sentence imposed'" and its "`reasons for imposing the maximum prison term.'" (Emphasis omitted.) Edmonson, 86 Ohio St.3d at 328, quoting 2929.19(B)(2)(d).
Mr. Zeffer challenges the trial court's decision to impose the maximum sentence. The trial court stated at the sentencing hearing that Mr. Zeffer's crime was "devastating, devastating to [Mrs. Beckler's husband], [Mrs. Beckler's children], [and the] other victims in this case." Further, the trial court stated that "in this particular case I don't think even the maximum sentence in this matter is proportionate to the harm you caused to all of these people in this case, to those three boys, [and] these other individuals." We adduce that the trial court was saying that, due to the harm caused, Mr. Zeffer committed one of the worst forms of this offense. Further, the trial court concluded that due to Mr. Zeffer's recidivism, he posed a danger to the public. In this regard, the trial court stated that "consecutive prison sentences in this case are necessary to protect the public considering the fact, Mr. Zeffer, you engaged in this very same conduct before and did not learn[.]" The trial court's conclusion concerning Mr. Zeffer's risk of re-offending is clearly just as relevant to its imposition of maximum sentences as to its imposition of consecutive sentences. The trial court also stated in regard to Mr. Zeffer's past offenses
 in short, as a result of that choice back in '96, I would have thought, sir, that you would have learned, you would have learned the risks, the dangers and the results of drinking and driving. You should have known, but, instead, once again, on August 7th, you made a choice, it's a conscious choice to drink and drive.
We must find by clear and convincing evidence that the trial court did not make one of the requisite findings. Based on this record, we cannot conclude that the trial court erred by failing to make one of the requisite findings accompanied by its reasons for imposing the maximum sentence.
 3. Consecutive Sentences
R.C. 2929.14 provides, in regard to a trial court's imposition of consecutive prison terms, that
 (E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 * * * (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
"[T]he verb `finds' as used in this statute means that the court must note that it engaged in the analysis and that [the sentence was imposed] for at least one of the [enumerated] sanctioned reasons." Edmonson,86 Ohio St.3d at 326. Moreover, if a court imposes consecutive sentences under R.C. 2929.14(E)(4), the court shall make a finding that gives "its reasons for imposing the consecutive sentences." R.C. 2929.19(B)(2)(c).
Mr. Zeffer also challenges the trial court's imposition of consecutive sentences. The trial court found consecutive sentences necessary "to protect the public" and "to punish the offender[.]" Further, the trial court found that consecutive sentences were "not disproportionate to the conduct in this case and the harm is so great in this matter that the concurrent term would in no way adequately reflect the serious nature of this conduct." The record of the sentencing hearing clearly demonstrates that the trial court made the requisite findings in regard to imposing consecutive sentences. Further, the trial court gave its reasons, citing the harm done to Mrs. Beckler's husband and children, the other victims who survived the wreck, and Mr. Zeffer's previous commission of a similar act. Specifically the trial court stated that Mr. Zeffer's actions were "devastating, devastating to [Mrs. Beckler's husband], [Mrs. Beckler's children], [and the] other victims in this case" and that "in this particular case I don't think even the maximum sentence in this matter is proportionate to the harm you caused to all of these people in this case, to those three boys, these other individuals." Further, the trial court stated that "the harm is so great in this matter that the concurrent term would in no way adequately reflect the serious nature of this conduct." Accordingly, we conclude that the trial court did not err in failing to make the findings required to order Mr. Zeffer to serve his sentences consecutively or to state its reasons for imposing consecutive sentences.
Mr. Zeffer further asserts that the record does not positively evidence the trial court's consideration of the recidivism and seriousness factors enunciated in R.C. 2929.12. We initially note that we cannot find a requirement that the trial court recite and analyze these factors on the record of the sentencing hearing, nor has appellant cited authority to that effect. However, assuming arguendo that such a requirement exists, the trial court indicated that it considered a multiplicity of factors, including some of those specifically enumerated in R.C. 2929.12 in its sentencing colloquy. Accordingly, we can discern no error.
Finally, Mr. Zeffer challenges the evidence underlying the trial court's determinations and findings in sentencing. This court has previously held that
 [p]ursuant to App.R. 9, [a] [d]efendant has the burden of providing an adequate record of the trial court's proceedings, including all the necessary transcripts and documents, for this [c]ourt's review. See Sommerville v. Chappell (Dec. 9, 1998), Lorain App. No. 97CA006887, unreported, at 5. In reviewing the transcript of the sentencing proceeding, it appears that the trial court had before it a presentence investigation report. However, this report has not been forwarded to this [c]ourt on appeal. Because a presentence investigation report was requested in this case, there is a presumption that the trial court utilized it in imposing a sentence. See State v. O'Neal (Sept. 29, 1999), Summit App. No. 19255, unreported, at 5, quoting State v. Koons (1984), 14 Ohio App.3d 289, 291. Because [the] [d]efendant failed to include the presentence investigation report in the record, this [c]ourt cannot properly review the trial court's decision. [The] [d]efendant has not provided this [c]ourt with sufficient evidence, therefore, this [c]ourt has no choice but to presume the validity of the trial court's sentencing proceeding and affirm.
State v. Cox (Apr. 12, 2000), Summit App. No. 19773, unreported, at 4-5.
Accordingly, as the record before us does not contain the presentence report, we are unable to fully determine the basis of the trial court's findings and we must presume regularity and affirm. Further, in the interest of justice, this court has endeavored to review the record that was presented on appeal and finds it to support the trial court's findings where it is relevant to them. Mr. Zeffer's first three assignments of error are overruled.
 III.
Mr. Zeffer's assignments of error are overruled. The judgment and sentence imposed by the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 ____________________________ BATCHELDER, Presiding Judge
CARR, J. CONCURS
[1] We do not reach the issue of whether incompetent medical treatment could be an intervening cause which would cut the chain of causation from a defendant's criminal act, but rather, find that the trial court did not err in determining that Mr. Zeffer had failed to demonstrate such negligence in this instance.