OPINION
Jeffrey Scarnati ("appellant") appeals the May 1, 2001 judgment entry by the Portage County Court of Common Pleas, denying his Crim.R. 32.1 motion to withdraw his guilty plea. For the following reasons, we affirm the decision of the lower court.
Appellant was indicted for aggravated vehicular homicide, in violation of R.C. 2903.06(A), (B), and (C), an aggravated felony of the third degree; involuntary manslaughter, in violation of R.C. 2903.04(B) and (C), an aggravated felony of the third degree; and aggravated vehicular assault, in violation of R.C. 2903.08(A), (B), (C), a felony of the fourth degree. The event leading to appellant's indictment occurred on May 25, 1996. Appellant was alleged to have recklessly caused the death of Eric Spelich and recklessly caused serious physical harm to Danielle Smith while operating a motor vehicle while under the influence of alcohol and/or drugs.
A plea hearing was held on February 21, 1997. Appellant was represented by counsel. The trial court accepted appellant's guilty plea for the offense of aggravated vehicular homicide. The prosecution entered a nolleprosequi as to the remaining charges. The trial court referred the matter to the adult probation department for a sentencing recommendation. On February 26, 1997, appellant filed his written guilty plea. That same day, the trial court journalized appellant's plea in a judgment entry.Subsequently, on June 9, 1997, a sentencing hearing was conducted. The trial court ordered a lifetime suspension of appellant's driver's license since alcohol was involved. The trial court sentenced appellant to an indefinite term of imprisonment of not less than four (4) years but no more than ten (10) years for the offense of aggravated vehicular homicide. The imposed sentence was journalized in a judgment entry that was filed on June 17, 1997.
On April 20, 2001, while continuing to serve his prison sentence, appellant filed a pro se Crim.R. 32.1 motion to withdraw his guilty plea. Appellant also filed a motion requesting an evidentiary hearing. Appellant contended that the trial court did not comply with Crim.R. 11. Appellant alleged that he was led to believe that he was pleading guilty to a probationable offense. Appellant also asserted that he did not enter a plea. Appellant attached his affidavit, reiterating that he was led to believe it was a probationable offense, that he would not have pled guilty had he been informed that the offense was not probationable, and that his attorney did not apprise him of his right to appeal.[1]
On May 1, 2001, without a hearing, the trial court filed a judgment entry denying appellant's pro se Crim.R. 32.1 motion to withdraw his guilty plea. Thereafter, on May 21, 2001, appellant filed a timely prose notice of appeal from the trial court's denial of his Crim.R. 32.1 motion. Appellant asserts the following five assignments of error:
 "[1.] The trial court erred in overruling appellant's motion to withdraw plea since: appellant's plea of guilty was not entered voluntarily, intelligently, and knowingly with full understanding of the consequences of the plea, and specifically, the trial court erred to appellant's prejudice by failing to inform appellant that he was not eligible for probation as required by Rule 11(C) of [the] Ohio Rules of Criminal Procedure, setting forth a Crim.R. 32.1 `manifest injustice', violating appellant's due process rights under the 14th Amendment, U.S. Constitution.
 "[2.] The trial court erred in overruling appellant's [Crim.R.] 32.1 motion since: appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Section Ten, Article I of the Constitution of the State of Ohio, setting forth a `manifest injustice' per Crim.R. 32.1.
 "[3.] The trial court erred in overruling appellant's Crim.R. 32.1 motion since: `the alleged guilty plea entered by the defendant at the time of the plea by the trial court, [sic] that the charge to which the plea was entered was a probational offense when by law, the charge was non- probationable carrying a mandatory minimum term of [sic] years in prison, and a maximum of 10 years in prison; defendant's honest belief per the record that he was at least eligible for probation was based on the erroneous interpretation of law by the trial court, and since defendant did not fully understand the consequences of his plea, to wit, that he was ineligible for consideration of probation, his plea and sentence are void as a matter of law under the due process clause of the Fourteenth Amendment. Defendant and his counsel would not have entered his plea of (guilty) under these circumstances but would have proceeded to trial (on the charges in the indictment).'
 "[4.] The trial court erred in overruling appellant's Crim.R. 32.1 motion since: `the defendant's plea is void in that the trial court court [sic] did not substantially comply with Criminal Rule 11(C)(2)(a)', setting forth a manifest injustice, per Crim.R. 32.1, violating Ohio US Constitutional rights.
 "[5.] The trial court erred by not granting defendant's motion to withdraw alleged plea, since per the record, he never pled. `It is not without purpose that Rule 11 requires the court to address its questions to the defendant, the justice system must be able to rely on the subsequent dialogue between the court and the defendant.', prejudicing appellant, resulting in `manifest injustice', per Crim.R. 32.1, allowing for incarceration with no guilty plea plea [sic], as provided by Crim.R. 11, violating appellant's due process rights under the 14th Amendment of the United States Constitution."
Appellant's assignments of error allege that the trial court erred in denying his Crim.R. 32.1 motion to withdraw his guilty plea. Appellant sets forth various reasons supporting his contention that a manifest injustice occurred. Appellant's assignments of error will be addressed in a consolidated manner. Specifically, appellant claims that the trial court did not substantially comply with Crim.R.11(C)(2). Appellant asserts that his guilty plea was not entered voluntarily, intelligently, and knowingly with full understanding of the consequences. Appellant argues that the trial court failed to ask him if he was making his plea voluntarily and failed to state that it was a non-probationable offense. Appellant adds that he was led to believe that it was a probational offense because the trial court referred the matter to the probation department and did not mention mandatory prison time. Appellant contends that he would not have pled guilty if it was a non-probational offense. Appellant also asserts that he was never personally asked how he pled; thus, he never pled guilty per the record. Appellant opines that he received ineffective assistance of counsel because his attorney failed to inform him of his right to appeal and failed to object to the trial court's failure to satisfy Crim.R. 11. Appellant adds that he was led to believe that he could not appeal.
Pursuant to Crim.R. 32.1, to withdraw a guilty plea after the imposition of sentence, a defendant bears the burden of demonstrating that such a withdrawal is necessary to correct a manifest injustice.State v. Kerns (July 14, 2000), Trumbull App. No. 99-T-0106, unreported, 2000 Ohio App. LEXIS 3202, citing State v. Smith (1977), 49 Ohio St.2d 261, paragraph two of the syllabus. A post-sentence Crim.R. 32.1 motion to withdraw a guilty plea is granted only in extraordinary cases to correct a manifest injustice. Smith, 49 Ohio St.2d at 264. Although there is no time limit for filing a Crim.R. 32.1 motion, an undue delay between the occurrence of the alleged cause for the withdrawal of a guilty plea and the filing of a Crim.R. 32.1 motion is a factor that affects the credibility of the defendant and weighs against allowing a defendant's plea to be withdrawn. Smith, supra, at paragraph three of the syllabus; see, also, State v. Jackson (Mar. 31, 2000), Trumbull App. No. 98-T-0182, unreported, 2000 Ohio App. LEXIS 1423, at 7.
A Crim.R. 32.1 motion is addressed to the sound discretion of a trial court. State v. Xie (1992), 62 Ohio St.3d 521, paragraph two of the syllabus. Thus, the good faith, credibility, and weight of a defendant's assertions in support of his motion are to be resolved by a trial court.State v. Gibbs (June 9, 2000), Trumbull App. No. 98- T-0190, unreported, 2000 Ohio App. LEXIS 2526, at 6, citing State v. Stumpf (1987),32 Ohio St.3d 95, 104. Our review is limited to a determination of whether the trial court abused its discretion. State v. Barnett (1991),73 Ohio App.3d 244, 250. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
In the case sub judice, appellant's Crim.R. 32.1 motion to withdraw his guilty plea for the offense of aggravated vehicular homicide was made more that four years after he entered his plea. Therefore, appellant must demonstrate the existence of a manifest injustice.
This court has held that the requirements of Crim.R. 11(C)(2) can be divided into the constitutional requirements of Crim.R. 11(C)(2)(c) and the non-constitutional requirements of Crim.R. 11(C)(2)(a) and (b). Statev. Gruber (Nov. 9, 2001), Lake App. No. 2000-L-031, unreported, 2001 Ohio App. LEXIS 5057; see, also, State v. Mallon (Dec. 17, 1999), Trumbull App. No. 98-T-0032, unreported, 1999 Ohio App. LEXIS 6131.[2]
A trial court must strictly comply with the constitutional requirements of Crim.R. 11(C)(2)(c). State v. Higgs (1997), 123 Ohio App.3d 400, 403. The failure to strictly comply with Crim.R. 11(C)(2)(c) invalidates a guilty plea. To comply with the requirements of Crim.R. 11(C)(2)(c), a trial court must explain to a defendant that he is waiving: (1) theFifth Amendment privilege against self incrimination, (2) the right to a jury trial, (3) the right to confront accusers, (4) the right to compulsory process of witnesses, and (5) the right to be proven guilty beyond a reasonable doubt. Gruber, supra, at 4, citing State v. Nero (1990),56 Ohio St.3d 106, 107-108.
However, while strict compliance is preferred, a trial court need not exercise strict adherence when discussing the non-constitutional requirements of Crim.R. 11(C)(2)(a) and (b). Gruber at 5, citing Nero,supra, 56 Ohio St.3d at 108. A guilty plea is valid if a trial court substantially complies with the language of Crim.R. 11(C)(2)(a) and (b). Substantial compliance means that, under the totality of the circumstances, a defendant subjectively understands the implications of his guilty plea and the rights that he is waiving. Id. Furthermore, a defendant, who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made, must demonstrate a prejudicial effect of which the test is whether the plea would have otherwise been made. Id.
In the case before us, upon review of the record, there was strict adherence to the constitutional requirements of Crim.R. 11(C)(2)(c). Specifically, the plea hearing transcript reveals that the trial court informed appellant, who appeared with counsel, that he was waving the right to a jury of twelve people, the right to confront and cross examine witnesses at that trial, the right to subpoena witnesses and have them come in and testify for him at that trial, and the right to have his guilt proven beyond a reasonable doubt at which time no one could compel him to testify against himself. When asked if he understood each of these rights that he was waiving, appellant responded in the affirmative.
Additionally, appellant's written guilty plea, signed by appellant and his attorney, further demonstrates that appellant understood the constitutional rights that he was waiving and that it was his intention to waive those rights. Appellant's written plea provides that he has been informed by his attorney and the judge that by pleading guilty he is waving the right to a jury trial, the right to confront and cross-examine witnesses against him, the right to subpoena witnesses to testify in his favor, and the right to require the state to prove his guilt beyond a reasonable doubt. Clearly, the record rebuts any claim that there was not strict compliance with the constitutional requirements of Crim.R. 11(C)(2)(c).
Next, upon further review of the record, we conclude that the non-constitutional requirements of Crim.R. 11(C)(2)(a) and (b) have been substantially met, meaning that, under the totality of the circumstances, appellant subjectively understood the implications of his guilty plea and the rights that he was waiving. As stated above, substantial compliance with the language of Crim.R. 11(C)(2)(a) and (b) is permissible.
In particular, appellant's argument, that he never pled guilty per the record since he was not personally asked how he pled, is not well taken. Although appellant's attorney answered the trial court's inquiry as to how appellant pled to the charge of aggravated vehicular homicide with the specification of alcohol use, appellant was present when his attorney responded: "[m]y client wishes to plead guilty." Immediately following counsel's response that "[my] client wishes to plead guilty", the trial court asked appellant if he understood the nature of the charge that he was pleading to, aggravated vehicular homicide, a felony of the third degree. Appellant responded "[y]es, sir." Appellant personally answered all remaining inquiries. Moreover, appellant's written plea of guilty, signed by appellant and his attorney, states that he understood the nature of the charge to which he was pleading guilty, aggravated vehicular homicide.
Next, appellant's argument that the trial court did not inform him that he was not eligible for probation is also not well taken. Crim.R. 11(C)(2)(a) provides that, if applicable, a trial court must inform a defendant that he is not eligible for probation. However, the record demonstrates that the trial court did not inform appellant that he was not eligible for probation. Nonetheless, the Supreme Court of Ohio held:
 "Where the circumstances indicate that the defendant knew he was ineligible for probation and was not prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a), the trial court's acceptance of the defendant's guilty plea to the non probationable crime * * * without personally advising the defendant that he was not eligible for probation constitutes substantial compliance with Crim.R. 11."
Nero, supra, 56 Ohio St.3d 106, syllabus (the defendant knew that he was not eligible for probation when he asked for some time to straighten out his affairs and when defense counsel stated during the plea hearing that the defendant ultimately knows that he is going to be incarcerated).
Similarly, this court and other appellate districts have held that, under certain circumstances, substantial compliance occurs despite the fact that a trial court fails to inform a defendant that he is not eligible for probation. See, Gruber, supra, Lake App. No. 2000-L-031, unreported, 2001 Ohio App. LEXIS 5057 (the trial court informed the defendant that he faced mandatory prison time and defense counsel stated that the court must give you prison time, not probation); State v. Knapp
(June 18, 1999), Portage App. No. 97-P-0060, unreported, 1999 Ohio App. LEXIS 2820 (the trial court informed the defendant that he faced a penalty of five, six, seven, eight, nine, ten years to twenty-five years and that he could be imprisoned for as long as two years and up to one and a half years on the other counts); State v. Lewis (Aug. 19, 1994), Trumbull App. No. 92-T-4687, unreported, 1994 Ohio App. LEXIS 3652 (the plea form stated that the defendant was not eligible for probation and the trial court informed the defendant that he could be sentenced to a minimum of five, six, seven, eight, nine, ten years to a maximum of twenty-five years and that there was an additional three years of actual incarceration); State v. Maxey (July 23, 1992), Adams App. No. CA 526, unreported, 1992 Ohio App. LEXIS 3862 (the defendant admitted that he understood that his sentence must include actual incarceration); Statev. Jones (June 15, 1992), Butler App. No. CA91-05-095, unreported, 1992 Ohio App. LEXIS 3125 (the trial court informed the defendant that a prison term was mandatory).
In the instant case, although the trial court should have strictly complied by informing appellant that he was pleading guilty to a non-probationable offense, based on the totality of the circumstances, appellant knew that he was subject to actual incarceration, demonstrating that he knew that he would not be eligible for probation.
First, while there are no time limits for submitting a post-sentence Crim.R. 32.1 motion, more than four years passed before appellant filed his Crim.R. 32.1 motion to withdraw his guilty plea. As stated previously, an undue delay of time is a factor that affects a defendant's credibility and weighs against granting a defendant's motion to withdraw his plea. Appellant waited four years into his prison sentence before asserting the argument in his Crim.R. 32.1 motion that the trial court failed to inform him that the offense was not probationable. The record demonstrates that even before appellant was sentenced, he had knowledge of the fact that he would be subject to actual incarceration and not eligible for probation.
Specifically, on April 8, 1997, appellant was interviewed for purposes of a presentence investigation report. The report stated that "[appellant] understands that he is facing a prison term and `expects the worse'. He plainly stated that `I should go, someone died'. I wish it had never happened. What comes to me, comes to me.'" During the sentencing hearing, appellant's counsel, referencing the statement that appellant made during his presentence investigation interview, stated:
 "One month ago, in quotes in the presentence report, there is an indication that `[s]omeone died, I must go.' When he [appellant] said `I must go,' he's referring to the penitentiary. He's come a long way. He's taking it to the point where he knows that the end in this case, the death of someone, the death of a friend means that he needs to be punished."
Further, during the sentencing hearing, appellant's counsel explicitly stated that probation was not appropriate in this case. When the trial court asked appellant if there was anything he wanted to say before sentencing, appellant did not comment on the statement by his attorney that probation was not appropriate. Further, the record contains no evidence of any procedural efforts to seek probation. Clearly, the undue delay of more than four years to assert the argument that the trial court failed to inform him that aggravated vehicular homicide was not probationable affects appellant's credibility and weighs against granting appellant's Crim.R. 32.1 motion to withdraw his plea.
Second, in exchange for his guilty plea to the offense of aggravated vehicular homicide, appellant avoided prosecution on additional charges for involuntary manslaughter and aggravated vehicular assault. Such a plea diminishes the possibility that appellant entertained any thoughts of receiving probation, given the seriousness of the offense at issue and the nature of the charges that were dropped. Appellant could not have anticipated probation. As the Supreme Court of Ohio stated in Nero,supra, at 108, "the bargain, though no doubt beneficial to [the defendant], does not suggest that probation could reasonably have been anticipated * * *." Appellant got the benefit of his guilty plea. As such, the totality of the circumstances demonstrates that appellant knew that he would be subject to actual incarceration; thus, ineligible for probation. Therefore, appellant was not prejudiced by the trial court's failure to specifically advise him that he was not eligible for probation.
As to the remaining non-constitutional requirements of Crim.R. 11(C)(2)(a) and (b), the trial court strictly complied. In particular, during the plea hearing, the trial court asked appellant if he understood the nature of the charge that he was pleading to, aggravated vehicular homicide, that the offense carried a maximum of up to ten years in prison and a maximum of up to $5,000, and that by entering a guilty plea he could be sentenced today. Appellant responded in the affirmative to each inquiry.
Finally, we find no merit to appellant's arguments that he received ineffective assistance of counsel. Appellant claims that his attorney failed to object to the trial court's failure to satisfy Crim.R. 11 and failed to inform him of his right to appeal. Appellant's written guilty plea, signed by appellant and his attorney, provides that he has been informed that by pleading guilty he waives the right to appeal any issue that might have been raised had he gone to trial and been convicted and that he understands and it is his intention to waive the right to appeal. Moreover, during the plea colloquy, upon being asked by the trial court if he understood that he was waiving the right to appeal, appellant replied in the affirmative. As to appellant's contention that counsel failed to object to the trial court's failure to satisfy Crim.R. 11, we concluded above that the trial court complied with the mandates of Crim.R. 11. As such, there is absolutely no evidence to support appellant's contention that his attorney was deficient.
In conclusion, the trial court strictly complied with the constitutional requirements of Crim.R. 11(C)(2)(c). As to the non-constitutional requirements of Crim.R. 11(C)(2)(a) and (b), while we recommend that a trial court engage in a thorough plea colloquy with a defendant, the trial court substantially complied in the instant case since, under the totality of the circumstances, appellant subjectively understood the implications of his guilty plea and the rights that he was waiving. Appellant has failed to demonstrate how he was prejudiced. There is nothing upon which to conclude that appellant's guilty plea was not knowing, intelligent, and voluntary. The passage of more than four years before appellant filed his Crim.R. 32.1 motion to withdraw his plea undermines any prejudice. Appellant's plea bargain significantly reduced the number of serious charges that he faced. Appellant has not met his burden of demonstrating the existence of an extraordinary situation to correct a manifest injustice. Therefore, the trial court did not abuse its discretion in denying appellant's Crim.R. 32.1 motion to withdraw his guilty plea.
For the foregoing reasons, appellant's five assignments of error are without merit. The judgment of the Portage County Court of Common Pleas, denying appellant's Crim.R. 32.1 motion to withdraw his guilty plea, is affirmed.
FORD, P.J., CHRISTLEY, J., concur.
[1] As an aside, previously, on July 23, 1999, appellant filed a prose Crim.R. 32.1 motion to withdraw his guilty plea. However, appellant later filed a pro se motion to voluntarily dismiss, without prejudice, his pending Crim.R. 32.1 motion. On August 6, 1999, the trial court granted appellant's request to voluntarily dismiss his Crim.R. 32.1 motion without prejudice.
Also, previously, on January 24, 2001, appellant filed a pro se notice of appeal with this court, appealing the February 26, 1997 judgment entry, journalizing his guilty plea. However, in a judgment entry filed on March 14, 2001, we overruled appellant's motion for a leave to file a delayed appeal and dismissed his appeal.
[2] Crim.R. 11(C)(2) provides, in part:
 "(2) In felony cases[,] the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing the following:
 "(a) Determining that the defendant is making the plea voluntarily, with the understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial which the defendant cannot be compelled to testify against himself or herself."