THE STATE OF OHIO, APPELLANT, *v.* SMITH, APPELLEE.

[Cite as State v. Smith (1977), 49 Ohio St. 2d 261.]

(No. 76-612—Decided March 23, 1977.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas J. Tenwick,* for appellant.

*Ticktin, Baron, Kabb & Valore Co., L. P. A.,* and *Mr. Russell Z. Baron,* for appellee.

CELEBREZZE, J. The majority opinion of the Court of Appeals below stated that "* * * the trial judge abused his discretion in refusing to allow the * * * [defendant] to withdraw his plea of guilty." We disagree.

The appellate court's conclusion is premised upon its application of the principles of law announced in *Cleveland* v. *Whipkey* (1972), 29 Ohio App. 2d 79, and *Boykin* v. *Alabama* (1969), 395 U. S. 238. In *Whipkey,* it was held, *inter alia,* that knowing, intelligent and voluntary waivers of the rights to trial by jury, to confrontation of one's accusers and against self-incrimination, mandated as necessary prerequisites to a valid plea of guilty to a felony charge in *Boykin, supra,* would henceforth be indispensable to a valid plea of guilty to a misdemeanor. *Boykin,* decided more than one year subsequent to the entry of the plea of guilty in the case at bar, also established that the state must demonstrate the defendant's knowing waiver of the three constitutional rights listed above, and that waiver would not be presumed from a silent record.

Assuming, *arguendo,* that the principles of *Boykin* and *Whipkey* are applicable to the instant guilty plea, it becomes necessary to discuss the nature of the proceedings here under review. Appellee has made a motion under Crim. R. 32.1 to withdraw his guilty plea, approximately seven years after the imposition of sentence. Because the Ohio Rules of Criminal Procedure are of relatively recent vintage, having become effective on July 1, 1973, there is a dearth of Ohio case authority construing Crim. R. 32.1. However, Rule 32(d) of the Federal Rules of Criminal Procedure is virtually identical to Ohio's Crim R. 32.1, and thus federal case law should show a path in applying the Ohio rule.

The federal case authority is collected in a comprehen-

sive annotation, Withdrawal of Plea of Guilty or Nolo Contendere, After Sentence, under Rule 32(d) of Federal Rules of Criminal Procedure, 9 A. L. R. Fed. 309. This article notes, at page 316, that federal courts will not set aside a judgment of conviction and permit the withdrawal of a guilty plea after sentence has been imposed unless such action is required to correct "manifest injustice." *United States* v. *Roland* (C. A. 4, 1963), 318 F. 2d 406. This term has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases. *United States* v. *Semel* (C. A. 4, 1965), 347 F. 2d 228, certiorari denied 382 U. S. 840, rehearing denied 382 U. S. 933. The standard rests upon practical considerations important to the proper administration of justice, and seeks to avoid the possibility of a defendant pleading guilty to test the weight of potential punishment. *Kadwell* v. *United States* (C. A. 9, 1963), 315 F. 2d 667, 670.

It has been expressly recognized by the weight of authority that a defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice. *United States* v. *Mainer* (C. A. 3, 1967), 383 F. 2d 444. The motion is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court. *United States* v. *Washington* (C. A. 3, 1965), 341 F. 2d 277, certiorari denied 382 U. S. 850, rehearing denied 382 U. S. 933. Although the rule itself does not provide for a time limit after the imposition of sentence, during which a motion to withdraw a plea of guilty must be made, it has been held that an undue delay between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion. *Oksanen* v. *United States* (C. A. 8, 1966), 362 F. 2d 74.[a]

---

[a] In *Oksanen*, it was recognized that the fact that over 10 years had elapsed between the time a defendant entered a guilty plea to a

In his motion to withdraw the guilty plea, appellee has alleged that he was not represented by counsel and that he misunderstood the nature of the charge and the effects of the plea. We may disregard the first allegation, since the record discloses that appellee affirmatively waived his rights to counsel and to a trial by jury. As to the other grounds stated, we note that appellee does not allege that the trial court failed to inform him of the nature of the charge, or the effects of his plea, as required by R. C. 2937.-02.[4] Rather, appellee indicates that he harbored some subjective misconception of the import of the charge. Appelless claims, more specifically, that he knowingly plead guilty to non-support of a child, but did not realize that the effect of such plea would be to adjudge him the father of the child. The trial court, however, expressly stated in the hearing on the motion that it had, prior to the entry of the plea, reviewed the complaint with appellee and that appellee admitted he understood the charge.

Significantly, appellee does not, in his motion, allege that he was unaware of, or that the trial court inhibited the exercise of, the right to confront witnesses or the privilege against self-incrimination. The Court of Appeals, *sua sponte*, asserted these constitutional arguments on behalf of appellee presumably because these rights were not waived in seriatim form on the record. We reject such a wooden application of due process principles. It is unnecessary for the state to demonstrate knowing waivers of rights when the appellee has not even raised these constitutional issues.

In view of the history of this cause and the narrow grounds alleged in appellee's motion, we find that the trial

Dyer Act violation and the filing of a Rule 32(d) motion to withdraw the plea cast serious doubt on the contention that the plea was not knowingly and understandingly made. The court noted that it would not have taken the defendant 10½ years to discover his misunderstanding, if such were the fact, and pointed out further that the defendant had previously been before the court and had not, at that time, made mention of his desire to withdraw the guilty plea.

[4]The provisions of R. C. 2937.02 are presumptively superseded by Crim. R. 5.

court properly concluded that manifest injustice had not been demonstrated.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

WILLIAM B. BROWN, J., concurring. The majority, on the basis of decisions interpreting Federal Rule of Criminal Procedure 32(d), finds that the trial court did not abuse its discretion in refusing to allow Smith to withdraw his guilty plea. Although the majority's statement of the case law applicable to Federal Rule 32(d) is relevant to the issue of failure to understand the charge raised by Smith before the Court of Appeals, it does not address a major issue raised, *sua sponte*, by the Court of Appeals and argued in the briefs of both parties to this court.[5] For that reason I concur only in the judgment of the majority.

The Court of Appeals found Smith's guilty plea to be defective because the record of the proceeding in which he pled guilty was silent, *inter alia*, concerning Smith's understanding of (1) the statutory charge against him, (2) his constitutional right to confront witnesses, and (3) his constitutional privilege against self-incrimination. By raising the question of a silent record in the guilty plea proceedings, the Court of Appeals did more than introduce a second, related issue into the instant cause. Where a record indicates that a petitioner has acquiesced in the

[5]Although this court need not, in affirming a Court of Appeals, address every ground on which that court based its decision (4 Ohio Jurisprudence 2d, Appellate Review, Section 1179), R. C. 2505.21, which grants those courts the power "to consider and decide errors which are not assigned or specified," would seem to require us to address issues raised, *sua sponte*, by appellate courts whose rulings we are *reversing.*

waiver of a constitutional right, the United States Supreme Court has held that the petitioner must "show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver." *Carnley* v. *Cochran* (1962), 369 U. S. 506, 516 (interpreting *Moore* v. *Michigan* [1957], 355 U. S. 155). However, where the records are *silent* as to an accused's acquiescence, waiver will *not* be presumed. *Carnley, supra*; *Boykin* v. *Alabama* (1969), 395 U. S. 238, 242. The Federal Rule 32(d) cases cited by the majority deal with petitioners who have the burden of proving their waivers were involuntary or unintelligent. They do not deal with silent records and petitioners whose acquiescence will not be presumed. Because they do not deal with such petitioners, those cases are inapposite with regard to the silent record issue raised by the Court of Appeals, and the majority opinion fails to adequately deal with that issue.

Once that issue is dealt with, however, it becomes apparent that the Court of Appeals was not justified in reversing the trial court on the grounds that the record of Smith's guilty plea proceedings was silent concerning his waiver of certain constitutional rights. In *Stovall* v. *Denno* (1967), 388 U. S. 293, 297, the United States Supreme Court set forth three factors to be considered in determining the retroactivity of decisions granting procedural safeguards in criminal trials, as follows: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." The *Boykin* rule serves two purposes—to safeguard the constitutional rights necessarily waived by a guilty plea and to expedite post-conviction attacks on guilty plea proceedings. *Boykin, supra*, at pages 242-244. Retroactive application of the *Boykin* rule is not necessary, however, to determine whether a defendant's waiver of his constitutional rights was voluntary and intelligent or to promote expeditious review of post-conviction claims, and the course followed

by the Court of Appeals might well affect informal but valid determinations of intelligent, voluntary waiver which courts have justifiably relied on in the past.[e] Therefore, the *Boykin* rule should not apply to the instant cause.

Once the issue of a silent record is disposed of on retroactivity grounds, the majority's reliance on Fed. Crim. R. 32(d) cases can be justified. However, since that reliance can only be justified after the silent record issue is addressed, I only concur in the judgment of the court.

---

[e]In the instant cause, the trial court's assertion that it had reviewed the complaint with the appellee and that the appellee understood the charge is the kind of evidence which could lead to a valid, pre-*Boykin* conclusion, despite a silent record, of intelligent and voluntary waiver.