OPINION
Tardeep S. Lamba appeals the judgment of the Montgomery County Court of Common Pleas denying his motion to vacate his guilty plea.
Lamba, who is not a citizen or a resident of the United States, was indicted by way of a bill of information on September 10, 1998 on one count of arson in violation of R.C. 2909.03(A)(2). He pled guilty to the charge on September 11, 1998 and was sentenced on September 24, 1998 to five years of community control. On November 13, 1998, Lamba was found to be an absconder, his community control was suspended, and a capias was issued for his arrest.
Lamba filed a motion to withdraw his guilty plea on June 16, 1999, arguing that he did not make the plea knowingly and voluntarily and that he did not make the plea with the full understanding of the possible immigration sanctions that could be imposed, namely deportation. A hearing was held on November 4, 1999 and December 15, 1999. The trial court denied Lamba's motion on February 12, 2001, finding that Lamba "had not carried his burden of showing that his plea was not knowingly and voluntarily made." (Doc. No. 29, p. 5.) Furthermore, the trial court found that it was not a "manifest injustice" for Lamba's motion to be denied, as Lamba had had the benefit of counsel from two separate attorneys regarding the issue of immigration and the trial court had explicitly stated to Lamba that he stood "a very substantial chance" of deportation.
Lamba now appeals the trial court's decision, asserting one assignment of error.
 I. The trial court committed an abuse of discretion by denying the petition to vacate the guilty plea[.]
Lamba claims that he misunderstood the ramifications of his plea to arson, as he believed that arson was not an aggravated offense for which he could be deported under federal law. Despite the trial court's admonition that there were "possible" deportation consequences resulting from his plea, Lamba contends that he entered the plea "under the erroneous understanding that the INS would not be interested in deporting him." Finally, Lamba states that the INS "knows" of his conviction and will "undoubtedly move" for his deportation, and that, if he were to be deported, the return to India would result in a "death sentence." For these reasons, he asserts that his plea was not voluntary and hence that the plea should be vacated.
In this case, Lamba does not argue that the trial court failed to abide by the requirements of R.C. 2943.031, which sets forth the advice a trial court must provide to a defendant regarding possible deportation upon a guilty or no contest plea. As such, we will review his claims under Crim.R. 32.1, which provides as follows:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
It is a defendant's burden to demonstrate a manifest injustice requiring a withdrawal of the plea. State v. Smith (1977), 49 Ohio St.2d 261, 3 O.O.3d 402. A post-sentence motion to vacate a guilty plea is addressed to the sound discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Blatnik (1987), 17 Ohio App.3d 201.
At the motion to vacate Lamba's plea, Dana Stamps, Lamba's trial attorney, testified that he had explained to Lamba that he would represent him on the criminal charge but he had directed Lamba to speak with an immigration attorney regarding the immigration aspect of his plea. According to Stamps, Lamba did contact an immigration attorney prior to his plea, and that attorney had explained that "as long as it wasn't an aggravated felony, and it was just a felony, that he would have a chance of not being deported." (Nov. 4, 1999, Tr. 57.) (Emphasis added.) The immigration attorney had explained to Lamba that "deportation would not necessarily be an outcome to a plea of felony arson." (Nov. 4, 1999, Tr. 79.) Based upon the information from the immigration attorney, Stamps and Lamba understood that Lamba's chance of not being deported was increased because the charge was not an aggravated felony. Stamps also mentioned that he believed Lamba had contacted an immigration attorney after the plea.
Additionally, the record demonstrates that the trial court verbally addressed the possibility of deportation as a consequence of a guilty plea with Lamba at the plea hearing on September 11, 1998:
 MR. DIVINE: Mr. Lamba is not a resident of the United States, so part of the potential penalty is he may be deported.
 THE COURT: That's correct. Mr. Lamba, one of the other ramifications of a plea in your case is that upon being convicted of the felony, you stand a very substantial chance of being deported because you are not a naturalized or U.S. national or naturally-born citizen. Do you understand that?
MR. LAMBA: Yes, Your Honor.
 THE COURT: So that's one of the risks that you will take here when you enter the plea. Have you discussed that at all with your attorney?
MR. LAMBA: Yes, Your Honor.
(September 11, 1998, Tr. 9.) In fact, the trial court's explanation went beyond the mandates of R.C. 2943.031(A), which requires only that the trial court advise that the conviction "may have the consequences of deportation[.]" (Emphasis added.)
Based upon the above facts, we find that it was not a "manifest injustice" for the trial court to deny Lamba's request to vacate his plea. It is clear that Lamba was aware of the possible consequences of his plea and that deportation was one such possible consequence. Such consequences had been explained to him by an immigration attorney and the trial court, and he may not now claim that he did not understand them. Accordingly, we do not find that the trial court abused its discretion in finding the plea to be voluntarily and knowingly given.
Lamba's assignment of error is overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and BROGAN, J., concur.