OPINION
{¶ 1} This matter is before this court upon the appeal of defendant-appellant, Willie J. Martin, from the September 10, 2003 decision and entry of the Franklin County Court of Common Pleas, which denied defendant's May 1, 2003 motion to withdraw his guilty plea. Defendant sets forth the following assignment of error:
The defendant's guilty plea was not knowingly and voluntarily entered into and was accepted in violation of crim.r. 11 and due process guarantees under the state and federal constitutions.
 {¶ 2} Defendant had been indicted in 1984 on one count of voluntary manslaughter, a first-degree felony. The offense for which he was indicted occurred in 1982. Pursuant to plea negotiations, the prosecuting attorney indicated that defendant would be entering a guilty plea to the stipulated, lesser-included offense of involuntary manslaughter, a third-degree felony under R.C. 2903.04(B), and that a felony count of carrying a concealed weapon would be dismissed by the state. (Tr. 2-4.)
 {¶ 3} On July 11, 1985, defendant appeared in court to enter his plea of guilty to the lesser-included offense of involuntary manslaughter. At the time, defendant appeared with counsel and submitted a plea form signed by defendant, as well as his counsel. The trial court then questioned defendant as to whether or not the guilty plea form had been fully explained to him by his counsel and whether he had the opportunity to read it himself. The defendant answered in the affirmative. The court then questioned counsel concerning whether or not he had consulted with defendant and whether, in his professional opinion, defendant was entering this plea voluntarily and intelligently. Counsel responded in the affirmative. The trial court then proceeded to determine whether defendant's guilty plea was knowingly, voluntarily, and intelligently entered pursuant to Crim.R. 11. At this hearing, defendant acknowledged that he had signed the written plea of guilty form, that he had read it over and discussed it with his attorney prior to signing it, that he was not under the influence of any drug or alcohol, and that no one had threatened him, promised him anything, or forced him to plead guilty. (Tr. 6-11.) The trial court then explained to defendant that he was waiving his right to trial by jury, the right to have counsel cross-examine witnesses, the right to call witnesses and to testify in his own defense, the right to require the state to prove his guilt beyond a reasonable doubt, the right to exercise his Fifth Amendment right to remain silent, and the right to appeal the verdict and sentence. (Tr. 12-16.)
 {¶ 4} The prosecuting attorney then presented a summary of the facts on which the plea was based, indicating that defendant and a man named Willie Blevins had a confrontation. Blevins confronted defendant, accusing him of having broken into Blevins' game room. According to testimony, Blevins struck defendant a couple of times and then went to the rear of defendant's automobile. Witnesses would testify that at that time defendant got out of his car, produced a handgun, and shot Blevins three times. According to witnesses, after defendant had emptied his gun, Blevins produced a handgun but did not fire it; instead, he ran between two buildings, collapsed and died.
 {¶ 5} Defense counsel was then given the opportunity to speak, and the following discussion took place:
Mr. Sheward: your honor, just a few things with regard to the facts. we don't dispute, in general terms, what was indicated by Mr. Allen.
If we were to try this case, our evidence would only be different to — the evidence, I believe, would show that the decedent not only had a gun, but that he had the gun out, ready to use.
There is no question about the fact that that gun was not fired. my client, throughout this case, has maintained that he fired because not only did the decedent in this case come out to my client's car and initiate this, as mr. allen said, he came out and pistol whipped my client, indicated to my client that he was going to shoot my client. and that's what precipitated it.
The Court: as I recall, the word got back to mr. martin that the decedent was placing some kind of blame upon him. So you're [sic] client, he went looking for —
Mr. Sheward: That's not true, no.
The Court: — and pulled up in front of the establishment, and this guy was looking for him.
Mr. Sheward: he did. but there is no evidence. no one has any evidence that my client went there looking for a fight. My client pulled in to this location, he was not looking for the other fellow, no.
The Court: I mean i think that has been suggested, that's been implied by Mr. Allen, but he pulled right in front of the business.
Mr. Sheward: that's right.
The Court: Is this business — is this a busy street with a —
Mr. Sheward: The green tavern was right next door. there was many businesses. My client pulled in to go to the green tavern. He was not going to this other place of business. and there is — and I don't know if — I don't want the court to think that my client went there to pick a fight.
And there is no evidence to indicate that at all. I think this — I think that was implied by Mr. Allen, but there is no evidence to that effect.
My client is going to the green tavern, and as he is entering the parking lot, he pulls into the parking lot, and he was approached by the decedent. But with those — with those, we basically cannot dispute the fact that obviously my client did fire his weapon three times, no question about that. He did have a weapon.
And I Think on those representations, the other representations that's been made by the prosecutor and in our conference prior to this, I don't know what else I can add. I think that this has been a most troublesome case both for my client and me becauser there is a genuine possibility here of a self-defense. that becomes a matter of proof.
I think that my client does fully understand the plea, and it is knowingly, intelligently and voluntarily made.
(Tr. 19-21.)
 {¶ 6} The trial court accepted defendant's guilty plea and sentenced him to an indefinite prison term of 18 months to ten years with 305 days of jail-time credit for pretrial detention.
 {¶ 7} On May 1, 2003, defendant filed a motion to withdraw his guilty plea. In his memorandum in support, defendant provided the following:
On July 11, 1985, Willie Martin entered a guilty plea to a charge of Involuntary Manslaughter. He was sentenced to eighteen months to ten years and served eighteen months in a state correctional facility as a result of that plea. In 1998, Mr. Martin was convicted of a Federal Drug Possession offense. As a result of his prior conviction for Involuntary Manslaughter, Mr. Martin has been deemed to be a career offender within the definition of the Federal Sentencing Guidelines. As a result of his classification as a career offender, Mr. Martin's sentence for the Federal Drug offense was increased from 57 months to 140 months.
 {¶ 8} In his motion, defendant sought to withdraw his guilty plea upon the contention that there was no factual basis for the guilty plea which the trial court accepted, and, as a result, that he was denied his constitutional right to due process. Defendant contended that he was continuing to be penalized by the manifest injustice of the violation of his constitutional rights as evidenced by the excessive sentence he later received upon being convicted of the federal drug possession offense.
 {¶ 9} The trial court entered its decision and entry denying defendant's motion to withdraw its guilty plea on September 10, 2003, after finding that, at the time of the plea, the state had read the facts of the case into the record, and the court had specifically asked defendant if he understood the plea bargain, the elements of the reduced charge of involuntary manslaughter, and if he was voluntarily entering the plea. As the trial court indicated, defendant answered in the affirmative and stated that he fully understood the signed guilty plea. The trial court concluded that defendant's due process rights had not been violated at the time of the plea. Furthermore, the trial court concluded that defendant had not met the burden of establishing manifest injustice under Crim.R. 32.1.
 {¶ 10} Thereafter, defendant filed the instant appeal.
 {¶ 11} A motion to withdraw a plea of guilty is governed by Crim.R. 32.1, which states, as follows:
A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
Accordingly, a defendant who seeks to withdraw a guilty plea after sentence has been imposed must demonstrate a manifest injustice. State v. Smith (1977), 49 Ohio St. 2d 261.
 {¶ 12} A manifest injustice has been defined as a "clear or openly unjust act." State ex rel. Schneider v. Kreiner (1998),83 Ohio St.3d 203, 208. Under the manifest injustice standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. Smith, at 264. A defendant seeking to withdraw his guilty plea after sentence has been imposed has the burden of establishing the existence of manifest injustice. Id.
 {¶ 13} In determining whether to grant a motion to withdraw a guilty plea, the trial court should consider the circumstances surrounding the defendant's plea, including whether the defendant was represented by competent counsel at a full hearing and voluntarily waived his right to trial. See State v. Hamblin
(Mar. 26, 2001), Butler App. No. CA2000-07-154, and State v.Kimbrough (Mar. 28, 1988), Stark App. No. CA-7363. In addition, the trial court should examine whether the withdrawal of the plea will prejudice the prosecution, the timing of the motion, the reasons given for the withdrawal, the defendant's understanding of the charges and penalties, and the existence of a meritorious defense. Id. See, also, State v. Fish (1995),104 Ohio App.3d 236. A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court and should be reversed on appeal only if the trial court's decision is unreasonable, arbitrary or unconscionable. State v. Blatnik (1984),17 Ohio App.3d 201.
 {¶ 14} For the reasons that follow, this court finds the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. First, as the trial court noted, defendant waited 18 years after the original pleas and only after he received enhanced penalties on an additional criminal conviction before he filed the motion to withdraw his guilty plea. Citing Smith, the trial court noted that this factor alone adversely affected the credibility of defendant and militated against the granting of the motion. Second, the trial court cited State v. Brown (Sept. 15, 1998), Franklin App. No. 97APA10-1396, wherein the defendant had argued that the trial court did not inquire about whether the defendant understood the essential elements of the crime. Upon review, this court concluded that the trial court specifically asked the defendant if he understood the elements of the crime, to which the defendant replied that he did. This court concluded that the trial court's statements should be viewed in totality to determine whether or not the denial of the motion to withdraw a guilty plea was an abuse of discretion.
 {¶ 15} In the present case, upon review of the transcript, this court concludes that the trial court did comply with Crim.R. 11 and adequately explained the charge to defendant. This court has held that it is not always necessary that a trial court advise a defendant of the elements of the crime or specifically ask the defendant if he understands the charge provided that the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge. State v. Duff (Dec. 19, 2000), Franklin App. No. 00AP-466. Upon review, this court concludes that the record establishes that defendant understood the charge to which he was pleading. Third, defendant was at all times represented by competent counsel, advised the court that he had discussed the case with his attorney, and indicated that he understood the charges and the consequences of pleading guilty.
 {¶ 16} Lastly, defendant contends that the trial court failed to properly determine whether or not defendant understood the defense of self-defense that was raised by the facts presented. Defendant cites State v. Dickey (1984), 15 Ohio App.3d 151, in support and contends that in Dickey, the Eighth Appellate District held that it was error for the trial court to refuse to allow the defendant to withdraw her guilty plea for carrying a concealed weapon when the record of the plea proceedings did not disclose that the defendant was fully aware of the nature of the affirmative defenses to this charge. However, Dickey is not on point with this case.
 {¶ 17} In Dickey, the defendant was accused of carrying a concealed weapon in violation of R.C. 2923.12(A), which provides as follows:
No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand any deadly weapon or dangerous ordnance.
 {¶ 18} The Dickey court noted that, as an integral part of R.C. 2923.12, the legislature had chosen to enumerate several affirmative defenses to the crime of carrying a concealed weapon under division (C), which provides as follows:
It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:
(1) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in or was going to or from the actor's lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent person in going armed.
(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in a lawful activity and had reasonable cause to fear a criminal attack upon the actor or a member of the actor's family, or upon the actor's home, such as would justify a prudent person in going armed.
(3) The weapon was carried or kept ready at hand by the actor for any lawful purpose and while in the actor's own home.
(4) The weapon was being transported in a motor vehicle for any lawful purpose, and was not on the actor's person * * * [.]
 {¶ 19} The court concluded that Crim.R. 11 required the court to determine that the accused charged with carrying a concealed weapon understood that the above statutorily created affirmative defenses are essential components of the nature of the crime of carrying a concealed weapon and held that the statutorily prescribed affirmative defenses are critical elements of the offense. As such, the court concluded that due process required that such "critical elements" be explained to the accused.
 {¶ 20} In the present case, there is no statutorily created affirmative defense to the charge of involuntary manslaughter. As such, the court's rationale from Dickey is inapplicable to the facts of the present case.
 {¶ 21} Based on the foregoing, this court concludes that defendant has not demonstrated that the trial court abused its discretion in denying his motion to withdraw his guilty plea under Crim.R. 32.1. Therefore, defendant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed. Judgment affirmed.
Klatt and Sadler, JJ., concur.