The STATE of Ohio, Appellee,

v.

BIGSBY, Appellant.

[Cite as *State v. Bigsby*, 162 Ohio App.3d 251, 2005-Ohio-3590.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83370.

Decided July 14, 2005.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Pamela Bolton, Assistant Prosecuting Attorney, for appellee.

Major & Associates and James L. Major, for appellant.

MICHAEL J. CORRIGAN, Judge.

{¶ 1} Defendant, Carl Bigsby ("Bigsby"), pleaded guilty to aggravated burglary (with a three-year firearm specification), gross sexual imposition, felonious assault, and aggravated robbery. The charges arose when Bigsby, his brother Charles Bigsby, Dontay Cooper, and Samuel Lettman entered the victims' apartment and terrorized them at gunpoint. All four defendants entered guilty pleas based on the same facts. At sentencing, Charles Bigsby told the court that he had had second thoughts about his guilty pleas, as he was innocent of the crimes charged. When the court asked Bigsby if he too wished to withdraw his plea, Bigsby responded in the negative. The court postponed sentencing pending the outcome of Charles's trial. When the parties reconvened for sentencing, Bigsby waited until after one victim gave the court an impact statement before saying that he wished to withdraw his plea on account of his innocence. The court denied the motion to withdraw the plea and sentenced Bigsby to a total of 12 years in prison.

## I

{¶ 2} Bigsby first argues that the court erred by sentencing him to a greater term of incarceration than that given to Dontay Cooper, another of the codefendants. Cooper received a seven-year sentence while Bigsby received a 12–year sentence. Bigsby maintains that there was no basis for the inconsistency.

{¶ 3} R.C. 2929.11(B) requires the court to impose a sentence for a felony that is (1) reasonably calculated to protect the public and punish the offender, (2) "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and [ (3) ] consistent with sentences imposed for similar crimes committed by similar offenders." The court is required to consider all relevant and mitigating factors, but need not articulate these considerations on the record when considering the consistency and proportionality of a sentence. Instead, the sentence need only be supported by clear and convincing evidence in the record. R.C. 2953.08(G).

{¶ 4} The court did not err by sentencing Cooper and Bigsby differently. The court specifically noted that Cooper had no prior record, while the court knew that Bigsby had a prior conviction for drug trafficking. Although not stated as a reason by the judge, the record shows that Cooper expressed remorse for his actions, while Bigsby showed none, even though he admitted being present in the victims' apartment. Given these facts in the record, the court's sentences were proportionate.

{¶ 5} The court did note that it presided over the jury trial held for Charles Bigsby and that the facts proven "were pretty awful." We see nothing improper with the court making reference to facts that were adduced in the trial of one of the codefendants. By pleading guilty, Bigsby admitted committing the charged offenses, and any facts that came out in the trial of a codefendant charged with the same conduct would have been probative in considering sentence. R.C. 2929.12(A) gives the court discretion to consider "any other factors" that are relevant to its sentencing decision. Reference to facts determined at trial fall within this category.

## II

{¶ 6} Bigsby next raises issues with respect to the court's refusal to permit him to withdraw his guilty plea. First, Bigsby claims that the court erred in relying on facts gleaned from Charles Bigsby's criminal trial to deny Bigsby's presentence motion to withdraw his guilty plea. Second, Bigsby argues that his counsel was ineffective for advising him not to withdraw his plea at the same time his brother did.

A

{¶ 7} Crim.R. 32.1 permits a defendant to withdraw a guilty plea prior to the imposition of sentence. As a general rule, the withdrawal of a presentence motion should be freely granted. *State v. Xie* (1992) 62 Ohio St.3d 521, 526, 584 N.E.2d 715. Nevertheless, there is no absolute right to have a presentence motion to withdraw a guilty plea granted. A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, paragraph two of the syllabus. To determine whether the court abused its discretion, we consider (1) whether the accused is represented by highly competent counsel, (2) whether the accused was afforded a full hearing, pursuant to Crim.R. 11, before entering the plea, (3) the nature of the court's hearing on the motion, and (4) the actual consideration given to the plea-withdrawal request. *State v. Peterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863.

{¶ 8} We find that the court did not abuse its discretion by denying Bigsby's motion to withdraw his guilty plea. Bigsby made his motion orally at sentencing after the victim had given her impact statement. He told the court that the victim had lied and that he was guilty only of being in the apartment. When asked about specific allegations, Bigsby denied them, saying that "another dude" had been inside the apartment but "got away." He further contradicted police reports that confirmed statements made by the victims. Bigsby said that counsel had advised him against withdrawing his plea, and counsel told the court that he had, in fact, advised against withdrawing the plea, particularly since Bigsby had turned down an earlier chance to withdraw his plea.

{¶ 9} Although the court did not hold a formal hearing on the motion to withdraw the guilty plea, it delved into the specifics of the motion to such an extent that we cannot say that it denied Bigsby an opportunity to be heard. As defense counsel pointed out, Bigsby never denied being the person who brought the other three men to the victims' apartment. That being the case, he would have been complicit in any offenses occurring there, whether or not he acted as the principal offender. On these facts, we see no legitimate basis for holding that the trial court was required to permit him to withdraw his plea.

{¶ 10} Bigsby is incorrect in his argument that since the court granted Charles's motion to withdraw his plea, it should have granted Bigsby's as well. Bigsby had the earlier opportunity to withdraw his plea and specifically refused to do so. No doubt, certain aspects of the jury's verdict in Charles's case (the jury deadlocked on some of the counts) gave Bigsby hope that he might prevail at trial. But the time to ask for withdrawal had long since passed, and the court did not abuse its discretion by finding that Bigsby did not make a timely request.

B

██ {¶ 11} Finally, Bigsby argues that his counsel violated an essential duty by failing to advocate the motion to withdraw the guilty plea on his behalf. As we earlier noted, counsel told the court that Bigsby made the motion against his advice. Bigsby claims that counsel improperly substituted his judgment for that of the client.

██ {¶ 12} To establish ineffective assistance, Bigsby must show that (1) trial counsel's performance fell below an objective standard of reasonableness and (2) the substandard performance actually prejudiced the defendant. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 13} The facts of this case fail to show that counsel's performance fell below an objective standard of reasonableness. Counsel had the duty to represent his client, and sometimes good representation means making the best of a bad situation. As part of the plea bargain, the state agreed to dismiss six counts, several of which were first-degree felonies. Given that a jury had found Charles guilty of several counts, counsel could well have expected a similar result had Bigsby gone to trial. In fact, a second trial on the same facts might have given the state a chance to polish its case against him. With all of this looming in the background, counsel properly advised his client to take the plea bargain, particularly since the motion to withdraw the guilty plea was so lacking in substance.

Judgment affirmed.

McMONAGLE, J., concurs.

KARPINSKI, P.J., concurs separately.

KARPINSKI, Judge, concurring.

{¶ 14} I concur with the majority that defendant's sentences are proportionate to sentences imposed for similar crimes. I write separately, however, to address an issue arising from *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, which was decided after defendant was sentenced, but while this appeal was pending. Even though defendant did not raise *Blakely* in the court below, I believe this court should sua sponte apply *Blakely* to the sentencing issues raised herein. The United States Supreme Court "has established precedent that when a decision of its court results in a new rule, that rule applies to all criminal cases, both state and federal, still pending on direct review." *State v. Duffield,* Cuyahoga App. No. 84205, 2005-Ohio-96, 2005 WL 77086, at ¶ 36, citing *Schriro v. Summerlin* (2004), 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442.

{¶ 15} Under *Blakely,* defendant could argue that in running his sentences on Counts 1 and 4 consecutively to one another and consecutively to the four years

he received on Counts 8 and 9, the trial court violated his Sixth Amendment rights.

{¶ 16} In *Blakely,* the court held:

Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* See *Ring* [*v. Arizona* (2002), 536 U.S. 584,] 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 ("the maximum he would receive if punished according to the facts reflected in the jury verdict alone" (quoting *Apprendi* [*v. New Jersey* (2000), 530 U.S. 466,] 483 [120 S.Ct. 2348, 147 L.Ed.2d 435]])); *Harris v. United States,* 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); cf. *Apprendi,* supra, at 488, 120 S.Ct. 2348, 147 L.Ed.2d 435 (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," (citation omitted) and the judge exceeds his proper authority.

*Blakely,* supra, at 2537. (Emphasis sic.)

{¶ 17} Consecutive sentences are governed by R.C. 2929.14(E)(4), which, as summarized in *State v. Fair,* Cuyahoga App. No. 82278, 2004-Ohio-2971, 2004 WL 1277153, ¶ 35, provides:

The court must find that consecutive sentences are: (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the defendant's conduct; and (3) not disproportionate to the danger the defendant poses to the public. In addition to these three findings, the trial court must also find one of the following: (1) the defendant committed the offenses while awaiting trial or sentencing on another charge; (2) the harm caused was so great that no single sentence would suffice to reflect the seriousness of defendant's conduct; or (3) the defendant's criminal history is so egregious that consecutive sentences are needed to protect the public. R.C. 2929.14(E)(4)(a)-(c).

{¶ 18} Arguably, under *Blakely,* such judicial findings would violate defendant's Sixth Amendment right to trial by jury.

{¶ 19} This court, however, recently addressed this argument in its en banc decision of *State v. Lett,* 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, and held that imposing consecutive sentences under R.C. 2929.14(E) does not implicate the Sixth Amendment as construed in *Blakely.*

{¶ 20} In conformity with this court's en banc decision in *Lett,* I would acknowledge that its application in the case at bar would result in finding that defendant's consecutive prison terms do not violate *Blakely.* I therefore would proceed to the analysis that the majority has provided, but I do so reluctantly because I believe that the en banc procedure this court used in *Lett* is unconstitutional, and I dissented for that reason, as well as on the merits. With that reservation, I thus concur with the majority opinion in its decision to affirm the trial court.