[Cite as *State v. Walton-Kirkendoll*, 2025-Ohio-1006.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 23CA011947 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHAWN WALTON-KIRKENDOLL | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 21CR105487 |

DECISION AND JOURNAL ENTRY

Dated: March 24, 2025

SUTTON, Judge.

**{¶1}** Defendant-Appellant Shawn Walton-Kirkendoll appeals the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** Mr. Walton-Kirkendoll was indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree, with an eighteen-month firearm specification and a fifty-four month firearm specification, as well as a repeat violent offender ("RVO") specification; one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree, with an eighteen-month firearm specification and a fifty-four month firearm specification. He pleaded not guilty to these charges.

{¶3}     One day prior to his scheduled jury trial, Mr. Walton-Kirkendoll pleaded guilty to an amended indictment.  The State amended the eighteen-month firearm specification to count one, aggravated burglary, to a one-year firearm specification and dismissed the fifty-four month firearm specification to the same count, dismissed both firearm specifications to count three, gross sexual imposition, and the parties agreed to a recommended five-year prison sentence.

{¶4}     Prior to engaging in a plea colloquy with the trial court, Mr. Walton-Kirkendoll executed a plea form wherein he was provided information about the charges levied against him, potential maximum penalties, the parties' agreement regarding the recommended sentence of five years, and the waiver of his constitutional rights.  Mr. Walton-Kirkendoll responded to a question on the plea form regarding if he had time to talk to his attorney about the case and if he was satisfied with his attorney's service and advice as follows: "I had time to talk to him.  But no [I'm] not satisfied with my lawyer's service."  Further, Mr. Walton-Kirkendoll hand-wrote on the form: "DEF wants to address the court."  In responding to the question regarding whether "anyone used any force or made any promises to you in order to get you to plead guilty[,]" Mr. Walton-Kirkendoll answered "no[.]"  Mr. Walton-Kirkendoll also answered "no" to the question regarding whether any other promises or representations had been made to him.

{¶5}     During Mr. Walton-Kirkendoll's Crim.R. 11 plea colloquy with the trial court, the following relevant exchange occurred on the record:

> THE COURT:  Do you understand that a plea of guilty is an admission that you did these offenses and you're giving up your right to a trial by jury?
>
> THE DEFENDANT: Yes.
>
> THE COURT:  Sir, I'm going to have you shown what's known as a plea of guilty form.  Did you sign that form?
>
> THE DEFENDANT:  Yes.

THE COURT:  Is that your signature on that page?

THE DEFENDANT:  Absolutely.

THE COURT:  Before you signed that form, did you have an opportunity to review it with [your attorney]?

THE DEFENDANT:  Yes.

THE COURT:  Did he explain it to you?

THE DEFENDANT:  Yes.

THE COURT:  Did you understand it?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign this form voluntarily, of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Were any promises made to you that haven't been discussed on the record?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened you in order to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Do you have any objection to a plea of guilty being entered on your behalf at this time?

THE DEFENDANT:  No, sir.

THE COURT:  Are you satisfied with [your attorney's] services?

THE DEFENDANT:  Yeah, I am.

THE COURT:  Is there anything about this proceeding you don't understand?

THE DEFENDANT:  No.

THE COURT:  Do you have any questions of me at this point, sir?

THE DEFENDANT:  No, sir.

THE COURT: Sir, how do you wish to plead to the charges in the amended indictment?

THE DEFENDANT: Guilty.

. . .

THE COURT: Mr. [Walton-] Kirkendoll, is there anything you'd like to tell me before I pronounce sentence?

THE DEFENDANT: Yes. Can you give me a second, please. I ain't got nothing to say.

{¶6} The trial court sentenced Mr. Walton-Kirkendoll to the parties' recommended five-year prison sentence and ran it concurrent with his prior prison sentences. Subsequent to sentencing, Mr. Walton-Kirkendoll filed a motion to withdraw his plea. In so doing, Mr. Walton-Kirkendoll argued his plea should be withdrawn due to a manifest injustice.

{¶7} In his motion, Mr. Walton-Kirkendoll argued he "had every intention to take this case to trial," and he further argued his attorney, "failed to fulfill his duties[,]" and "coerced" him into taking a plea through "intimidation." Mr. Walton-Kirkendoll attached three exhibits in support of his motion. Exhibit A, a correspondence from Mr. Walton-Kirkendoll to his attorney dated August 20, 2022, discussed Mr. Walton-Kirkendoll's review of discovery and his opinion regarding the evidence in this case. Exhibit B, a second correspondence from Mr. Walton-Kirkendoll to his attorney dated November 3, 2022, listed additional witnesses Mr. Walton-Kirkendoll wanted "questioned on the stand[,]" and a request for his attorney to seek a restraining order against the juvenile victim in this case. Exhibit C, a correspondence from Mr. Walton-Kirkendoll's attorney to Mr. Walton-Kirkendoll dated November 30, 2022, referenced discussions between them that had taken place on three separate occasions. According to the correspondence, Mr. Walton-Kirkendoll's attorney was preparing for trial, but was "gravely concerned" about the outcome of trial due to Mr. Walton-Kirkendoll's voluntary interview with the Elyria Police

Department and potential testimony of the juvenile victim.  Mr. Walton-Kirkendoll's attorney also explained the State's burden of proving the crimes charged were committed by Mr. Walton-Kirkendoll beyond a reasonable doubt and the potential maximum prison sentence of 35 years if Mr. Walton-Kirkendoll is convicted on all counts.  Further, Mr. Walton-Kirkendoll's attorney relayed a plea deal wherein Mr. Walton-Kirkendoll  would receive a five-year prison sentence running concurrent with his prior prison sentences, and his attorney indicated it was his "strongest professional suggestion[,]" that Mr. Walton-Kirkendoll not risk the possibility of going to trial and receiving consecutive sentences up to 35 years.

**{¶8}**    The trial court denied Mr. Walton-Kirkendoll's post-sentence motion to withdraw his guilty plea.

**{¶9}**    Mr. Walton-Kirkendoll  now appeals raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING [MR. WALTON-KIRKENDOLL] THE OPPORTUNITY [TO] WITHDRAW HIS PLEA[.]**

**{¶10}**   In his sole assignment of error, Mr. Walton-Kirkendoll argues the trial court abused its discretion in denying his post-sentence motion to withdraw his guilty plea.  Specifically, Mr. Walton-Kirkendoll argues his trial counsel was ineffective for coercing him into taking the plea deal and not adequately preparing for trial.

**{¶11}**   "A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." *State v. Moton*, 2022-Ohio-780, ¶ 5 (9th Dist.), quoting Crim.R. 32.1. "Post-sentence relief under Crim.R. 32.1 is only available in

extraordinary cases characterized by 'a fundamental flaw in the plea proceedings resulting in a miscarriage of justice.'" *Moton* at ¶ 5, quoting *State v. Straley*, 2019-Ohio-5206, ¶ 14. Further, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "The term 'manifest injustice' has been described as a 'clear or openly unjust act.'" *State v. Sibert*, 2020-Ohio-3786, ¶ 9 (9th Dist.), quoting *State v. Ruby*, 2007-Ohio-244, ¶ 11 (9th Dist.), quoting *State ex rel. Schneider* v. *Kreiner*, 83 Ohio St.3d 203, 208 (1998). "[T]he decision whether to grant a motion to withdraw a guilty plea rests within the sound discretion of the trial court." *State v. Pippert*, 2016-Ohio-1352, ¶ 16 (9th Dist.).

{¶12} "A defendant who argues that a guilty plea should be withdrawn because of ineffective assistance of counsel must demonstrate that counsel's performance was actually deficient and that the defendant was prejudiced by it." *State v. Young*, 2015-Ohio-4973, ¶ 6 (9th Dist.), citing *State v. Xie*, 62 Ohio St.3d 521, 524 (1992). "With respect to the deficient performance of counsel, the defendant must establish deficiency in the performance of counsel 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Id*. quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The defendant must also demonstrate prejudice in connection with the guilty plea itself." *Id*., citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*., quoting *Lockhart* at 59. "The cornerstone of the analysis is whether counsel's deficient performance precluded the defendant from entering a guilty plea that was knowing and voluntary." *Id*., citing *State v. Atkinson*, 2006-Ohio-5806, ¶ 14 (9th Dist.).

{¶13} Here, a review of the record indicates several reasons Mr. Walton-Kirkendoll's arguments fail. First, there is no evidence of coercion in the record. In his motion to withdraw his guilty plea, Mr. Walton-Kirkendoll points to the November 30, 2022 correspondence from his attorney wherein his attorney advised Mr. Walton-Kirkendoll about the stark reality of his charges, the maximum amount of time he could be imprisoned if the trial court sentenced him to consecutive sentences, and the negative impact his voluntary police interview and the testimony of the juvenile victim may have at a jury trial. Indeed, Mr. Walton-Kirkendoll's attorney was rightly providing his professional opinion about the best and worst possible outcomes for Mr. Walton-Kirkendoll given the circumstances of the case. *See State v. Williams*, 2016-Ohio-5655, ¶ 19 (2d Dist.) ("Based on our review of the transcript, defense counsel did no more than what any good attorney would do. Defense counsel strongly believed that [his client] would be convicted and that accepting the plea deal was in his client's best interest. Defense counsel conveyed these opinions to [his client] and encouraged him to accept the State's offer.").

{¶14} The November 30, 2022 correspondence also indicated Mr. Walton-Kirkendoll's attorney was preparing for trial, and would continue doing so if Mr. Walton-Kirkendoll chose not to take the plea deal. Further, the record demonstrates Mr. Walton-Kirkendoll's attorney requested discovery, shared it with Mr. Walton-Kirkendoll, and discussed the case with Mr. Walton-Kirkendoll on multiple occasions. The fact that no defense witnesses were subpoenaed is not, in and of itself, indicative of whether Mr. Walton-Kirkendoll's attorney prepared for trial as this could be sound trial strategy. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *State v. Sarvabui*, 2020-Ohio-1429, ¶ 18 (9th Dist.), quoting *Strickland* at 689.

{¶15} Finally, the plea form and transcript of the plea hearing support that Mr. Walton-Kirkendoll's plea was knowing, voluntary, and intelligent, and there was not "a fundamental flaw in the plea proceedings resulting in a miscarriage of justice.'" *Moton*, 2022-Ohio-780, at ¶ 5, quoting *Straley*, 2019-Ohio-5206, at ¶ 14. Specifically, on the plea form, Mr. Walton-Kirkendoll indicated he received no additional promises or representations, and no one used force to compel him to plead guilty. Additionally, during the plea colloquy, Mr. Walton-Kirkendoll reiterated he voluntarily signed the plea form after his attorney explained it to him, and no threats or promises were made to compel him to sign the plea form. Mr. Walton-Kirkendoll further indicated he was satisfied with his attorney's performance and wanted to plead guilty to the charges in the amended indictment. When given a chance to ask questions or address the trial court, Mr. Walton-Kirkendoll declined. Similar to *State v. Finkbine*, 2006-Ohio-1788, ¶ 9 (12th Dist.), the plea form and transcript in this matter reflects Mr. Walton-Kirkendoll discussed the details of the plea agreement with his attorney to his satisfaction and the trial court fully complied with Crim.R. 11. As such, the record contradicts Mr. Walton-Kirkendoll's arguments and reflects a knowing, voluntary and intelligent plea made in open court.

{¶16} Thus, because Mr. Walton-Kirkendoll did not meet his burden of proof regarding the existence of manifest injustice in the plea proceedings or show that his counsel's alleged deficient performance precluded him from entering a guilty plea that was knowing, voluntary, and intelligent, the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea. *See Smith,* 49 Ohio St.2d 261 at paragraph one of the syllabus; *see also Atkinson*, 2006-Ohio-5806, at ¶ 14.

{¶17} Accordingly, Mr. Walton-Kirkendoll's sole assignment of error is overruled.

III.

**{¶18}** For the foregoing reasons, Mr. Walton-Kirkendoll's assignment of error is overruled.  The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

TONY CILLO, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.