[Cite as *State v. Barbee*, 2025-Ohio-3244.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 25AP-182 |
| v. | : | (C.P.C. No. 23CR-1583) |
| Erich O. Barbee, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 9, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Wolfe & Mote Law Group, LLC*, and *Stephen T. Wolfe*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Erich O. Barbee, appeals the January 24, 2025 decision of the Franklin County Court of Common Pleas denying his post-sentencing Crim.R. 32.1 motion to withdraw his guilty plea and asserts in a single assignment of error that the trial court created a miscarriage of justice inconsistent with due process by denying his motion.

{¶ 2} On October 28, 2024, Barbee entered into an agreement with the state and pleaded guilty to aggravated murder with a firearm specification and attempted murder with a violent career criminal specification. At Barbee's combined plea and sentencing hearing, the state described his crimes as follows:

> On March 15th, 2023, the victims, [M.C.] and [M.S.], were at [M.C.]'s home at 43 Rogers Avenue in Columbus, in Franklin County, Ohio. [M.C.] had known the defendant, Erich Barbee, for a few weeks at that point. He came over and brought drugs

that she had paid for. The drugs were fake, however, and they were unable to get high. They were then in a bad mood and the defendant left.

Later that night, he began texting [M.C.] and eventually came over to her house. While there, he was sitting on his phone for a bit. He then went into the kitchen with his gun in his hand and his finger on the trigger. Both [M.C.] and [M.S.] started yelling at him to put the gun away, partly because [M.S.]'s daughter had been previously killed by a firearm and she was afraid, and because [M.C.]'s one-year-old daughter was in the home at the time, as well.

At that point, [M.S.] began cowering by the kitchen sink, covered her head, and the defendant shot her in the back of the head executing her.

The defendant then walked out of the room and began turning off lights in the house and closing other doors. [M.C.] was terrified that he would hurt her baby, so she begged him not to and he said okay.

She then stepped back into the kitchen and he followed her in there and turned off the light. He put a gun to her forehead and held it there for about a minute and then shot her in the forehead. She played dead, but thankfully the bullet did not enter her brain. It went into her forehead, out under her chin, and then into her clavicle, and it still remains near her heart.

Afterward, the defendant grabbed the victims' phones and left with those. He also unplugged the Amazon Alexa that he knew was in her house that recorded video.

He then left, and [M.C.] climbed out onto the roof of her duplex home because the roof is right outside the window in her living room. She did not have her phone anymore because the defendant took it, so she began throwing shingles off the roof trying to get different cars to stop and help her.

She was also banging her feet on the roof. Thankfully, her downstairs neighbor, [E.R.], eventually, was able to call 911.

When officers arrived, they did not know exactly what had happened. They just knew there was a woman on the roof.

Asking for help. They immediately asked who shot her after she said, and she said it was Erich Barbee.

> They were eventually able to get inside. [M.S.], at that point, had already passed away and was pronounced deceased inside. They were able to get [M.C.] off the roof and took her to Grant Medical Center where she was treated at that time.
>
> The detectives were also able to obtain quite a bit of information from other witnesses, as well as his phone records that put him at the scene at the time of the shooting. He was also previously convicted of robbery as a felony of the second degree in Franklin County, Ohio, and convicted of second-degree robbery in California. He was also on post-release control at the time of the offense, but had been declared a violator at large.

(Oct. 28, 2024 Tr. at 6-9.) As noted above, Barbee pleaded guilty to two of the charges and a specification that had been set forth in his original indictment, waived a pre-sentence investigation, and agreed to a jointly recommended sentence. For its part, the state requested dismissal of some 12 other indicted charges, including two other counts of aggravated murder with specifications and two counts of murder with specifications (all of which set forth alternate theories of the homicide offense), one count of felonious assault with specifications, two counts of aggravated robbery with specifications, one count of disrupting public services, one count of tampering with evidence with specification, one count of escape, one count of unlawful use of a weapon by a violent career criminal with specification, and one count of having a weapon under disability with specification. (*See generally* Mar. 30, 2023 Indictment; Nov. 8, 2024 Jgmt. Entry at 1-2.)

{¶ 3} Following statements by the surviving victim M.C. and the sister of the deceased victim M.S., the trial court imposed the jointly recommended aggregate sentence of life in prison with the possibility of parole after 25 years of mandatory incarceration. (*See* Nov. 15, 2024 Am. Jgmt. Entry at 1-3.) But on December 1, 2024, Barbee's attorney filed a pro forma Crim.R. 32.1 motion to withdraw guilty plea on Barbee's behalf. The trial court ordered new counsel to be appointed, and Barbee's new counsel filed a supplemental motion to withdraw on January 17, 2025, which argued that although Barbee had apparently wanted to go to trial, he had "lost faith" in his prior appointed counsel, and asserted that on the date of the plea there were additional items of discovery outstanding (specifically a subpoena for records and/or video from Amazon), but that his counsel had told him that the trial would not be continued and would have to proceed without that

additional discovery.  (*See* Jan. 17, 2025 Supp. Mot. for Leave to Withdraw Guilty Plea at 2-3.)

> While [Barbee] does not contest that he was given a full plea colloquy and answered that he was entering his pleas knowingly, voluntarily, and intelligently, he claims that this was not entirely accurate, and that he only agreed due to his lack of confidence in his counsel and his concern that he would not receive a fair trial. Due to the nature of these claims, he would not have been able to raise these issues either at trial or on appeal, this a Crim.R.32.1 Motion is the correct avenue.

*Id.* at 3. The motion proceeded to a hearing on January 23, 2025, and Barbee did not call any witnesses to testify.  Following argument, the trial court denied the motion:

> [Barbee's trial counsel] Mr. Stoller and Ms. Reyes were in constant contact with the State and the Court preparing for that October 28th date.
>
> Mr. Stoller, even before then, asked to continue the October 28th date; and I said no. He asked informally, he asked in chambers if I would consider it about three or four weeks before, and I said no because we had already done that once.
>
> We were set for a June trial, I believe. June of 2024. And Mr. Stoller asked for a continuance, which I granted to help get you a more favorable plea offer. The fact that Mr. Stoller and Ms. Reyes thought that you had a difficult case and that would likely be convicted does not mean that they didn't represent you to the best of your ability. I think the 25 to life that you pleaded to knowingly, intelligently, and voluntarily shows that they did their absolute best to get you the best deal available. That they knew in their professional judgment that had you gone to trial and been convicted, you would have gotten decades more, decades more than what the plea offer was.
>
> You should be thankful for their work.
>
> But the Court, in reviewing the information before it, has no -- there's not even a whiff of any type of injustice. You just don't like what happened. You don't like the fact that you got caught is what your real gripe is, Mr. Barbee. It's time to take your medicine. The motion is denied.

(Jan. 23, 2025 Tr. at 14-15.)  (*See also* Jan. 24, 2025 Entry & Order Den. Def.'s Post-Sentence Mot. to Withdraw Guilty Plea, Pursuant to Crim. R. 32.1.)

{¶ 4} This timely appeal followed, and Barbee asserts the same arguments presented in the supplemental motion regarding his plea to this court and contends that because he lacked faith in his trial counsel and he was not afforded a continuance of the trial date, the trial court erred and abused its discretion by denying his motion to withdraw. Crim.R. 32.1 provides that a "motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; *but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.*" (Emphasis added). "Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Williams*, 2004-Ohio-6123, ¶ 5 (10th Dist.), quoted in *State v. Price*, 2024-Ohio-5823, ¶ 12 (10th Dist.). "Under the manifest injustice standard, a post-sentence motion to withdraw a guilty plea is available only in extraordinary circumstances." *State v. Davic*, 2021-Ohio-131, ¶ 12 (10th Dist.), citing *State v. Honaker*, 2004-Ohio-6256, ¶ 7 (10th Dist.), and *State v. Smith,* 49 Ohio St.2d 261, 264 (1977); *overruled on other grounds by State v. Enyart*, 2023-Ohio-3373, ¶ 26 (10th Dist.). Moreover, a Crim.R. 32.1 motion is generally addressed to the sound discretion of the trial court. *See, e.g.*, *Enyart* at ¶ 19, and *Davic* at ¶ 13, citing *e.g.*, *Smith*, paragraph two of the syllabus.

{¶ 5} Barbee conceded below and concedes here that he knowingly, voluntarily, and intelligently waived his rights and entered a plea of guilty to lesser and fewer charges than he faced in the indictment, that he received a benefit for his plea, and that the trial court scrupulously complied with the requirements of Crim.R. 11 in accepting Barbee's plea. Barbee's argument that he had "lost faith" in his counsel and felt he had no choice but to plead guilty is belied by his own engagement with that plea colloquy, in which he fully participated and asked clarifying questions about the nature of his appeal rights. (Oct. 28, 2024 Tr. at 17-19.) Given that Barbee did not present any contrary evidence at the hearing on his motion to withdraw, we simply cannot find that the trial court abused its discretion in concluding that Barbee failed to demonstrate a manifest injustice resulted from the acceptance of his plea.

Instead, we agree with the trial court that Barbee's motion resulted largely from a change of heart about the consequences of his plea and a desire to avoid punishment. Accordingly, we overrule Barbee's sole assignment of error and affirm the judgment of the trial court denying withdrawal of his guilty plea.

*Judgment affirmed.*

DORRIAN and BOGGS, JJ., concur.

———————————