[Cite as *State v. Oliphant*, 2017-Ohio-7534.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No.  L-16-1150

     Appellee                                         Trial Court No.  CR0201202836

v.

Jasin Oliphant                                         **DECISION AND JUDGMENT**

     Appellant                                       Decided:  September 8, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, for appellee.

Veronica M. Murphy, for appellant.

Jasin Oliphant, pro se.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Jasin Oliphant, appeals the April 22, 2016 judgment of the Lucas

County Court of Common Pleas, where the court denied his motion to withdraw his

*Alford* plea.  Finding no error, we affirm.

**Potential Assignments of Error**

{¶ 2} Appellant's counsel states the following as potential assignments of error:

    1.  INEFFECTIVE ASSISTANCE OF COUNSEL

    2.  DENIAL OF MOTION TO WITHDRAW GUILTY PLEA

{¶ 3} Appellant submits the following potential assignment of error:

    1.  The trial court erred in not granting this appellant's motion to withdraw his plea because attorney [trial counsel] outright lying to the appellant and his family to induce the plea rendered it unconstitutional as such an improper action cannot possibly yield a plea which is knowingly, voluntarily or intelligently made, and its acceptance violates the 5th and 14th amendments of the U.S. constitution and At Article 1, Section 16 of the Ohio Constitution.

**Facts**

{¶ 4} Appellant was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2), with firearm specifications under R.C. 2941.145; arson in violation of R.C. 2909.03(A)(1) and (B)(2)(b); carrying a concealed weapon in violation of R.C. 2923.12(A)(2) and (F); and having a weapon while under disability in violation of R.C. 2923.13(A)(2).

{¶ 5} The charges stem from an incident that occurred on October 29, 2012, in which appellant shot at two individuals, shot out the widows of one of the victim's vehicles, doused the vehicle with gasoline, lit the vehicle on fire, and fled the scene.

After fleeing the scene, appellant was pursued by Toledo police in a high speed chase. Appellant was eventually caught after wrecking the getaway vehicle and attempting to flee on foot. Inside appellant's wrecked vehicle was a loaded gun, which contained bullets that matched the bullet casings found at the scene of the crime.

{¶ 6} Appellant eventually pled guilty to the crimes, and on February 26, 2013, entered a guilty plea pursuant to *North Carolina v. Alford*. The state offered to nolle one of the felonious assaults and a firearm specification, along with the carrying a concealed weapons charge. The state also offered not to pursue a failure to comply charge, which would have resulted from fleeing the police. In the agreement, the maximum "basic prison term" was stated as "9 years & 54 mos. of which 1 year [was] mandatory."

{¶ 7} The plea agreement was memorialized in a writing that was signed by appellant, his attorney, the assistant prosecutor and the judge. Furthermore, the plea agreement was entered into the record during a plea hearing. At the hearing, the court engaged in extensive colloquy to insure appellant was fully aware of what his guilty plea meant. In addition to explaining appellant's constitutional rights and the consequences of entering the plea, the court informed appellant of the possible sentence and postrelease control sanctions. Specifically with regard to the possible maximum sentence, the record reflects as such:

THE COURT: Okay. Now, maximum penalties provided by law for these offenses are as follows: On count one, felonious assault, the basic

3.

mandatory* * *term is 2, 3, 4, 5, 6, 7 or 8 years in jail and a fine of up to $15,000. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Now, with regards to the firearm specification as to count one, there's a mandatory period of incarceration of one year. * * * Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Okay. With regards to count three, the arson charge, maximum penalty is 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, or 18 months in jail and a fine of up to $10,000. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** For having a weapon under a disability, maximum penalty is 9, 12, 18, 24, 30 or 36 months in prison and a fine of up to $5,000. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Um, so that maximum penalty here that – now, these sentences can be ordered served consecutively or one right after the other so that maximum period of incarceration you face is 9 years plus 54 months, which is 13 years and 6 months altogether. Thirteen years and six months, of which one year is mandatory, with a maximum possible fine of $30,000. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

{¶ 8} The court again mentioned the potential maximum term when discussing the possibility of community control as a sanction:

**THE COURT:** Now, with regard to the second possible sentence here; that is, community control, if you violate any of the conditions of supervision while under community control, you could be given a longer period under court control, greater restrictions or prison term totaling – let's see, what did we say that was – 13 years and a half, 13 and a half years. Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

{¶ 9} Appellant also confirmed for the court that he entered the plea free of coercion or threats, and that no one made any promises regarding the prison term to be imposed:

**THE COURT:** Apart from the plea bargain, has anybody made any threats or promises to get you to plead guilty to these three charges?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Nobody made any promises to you with regards to my sentence, did they?

**THE DEFENDANT:** No, Your Honor.

5.

{¶ 10} The court then proceeded to review the written plea agreement in open court, accept appellant's plea, and set the matter for sentencing on March 19, 2013.

{¶ 11} Sentencing was continued to May 14, 2013. At the sentencing hearing, the court gave appellant an opportunity to address the court prior to being sentenced. While doing so, appellant revealed that he was a changed man and that prison time would interrupt his development. Specifically, appellant stated:

> **THE DEFENDANT:** * * * I'm 30 now and *I just don't feel like another five, six, seven years in the penitentiary is going to keep me* – like, I'm not a bad guy. I'm not a – I don't feel like I am a lost cause. Like I got a lot of plans. I got a lot of ambitions and I just want the opportunity to exhaust them. I mean I know that I've got to go to the penitentiary because what I did was wrong and in all reality I deserve to go to the penitentiary[.]

(Emphasis added.)

{¶ 12} The court eventually sentenced appellant to 12 years incarceration: seven years for the felonious assault, one year for the firearm specification, one year for the arson, and three years for the weapon under disability. The sentences were ordered to run consecutively.

{¶ 13} Approximately ten months after being sentenced, appellant moved the court pro se to withdraw his guilty plea. The motion was based on his claim that the plea was not entered into knowingly, voluntarily and intelligently, and that his decision to

6.

plead guilty was based on constitutionally ineffective assistance rendered by his retained trial counsel. Appellant alleged that trial counsel lied to him and his family "to induce a plea by representing that trial counsel had worked out a deal" in which the sentence imposed by the court would not exceed six years incarceration.

{¶ 14} Attached to appellant's motion were affidavits from appellant's sister and girlfriend, in which both affiants stated they received a phone call from trial counsel and that trial counsel confirmed appellant would not receive more than six years incarceration when accepting the plea deal. Trial counsel eventually withdrew from the representation, and he was called as a witness at a hearing addressing the motion to withdraw appellant's plea.

{¶ 15} At the hearing trial counsel explained how, based on recorded jail conversations and recordings of 911 calls made by the victim, it was in appellant's best interest to accept the offered plea deal. Trial counsel also clarified for the court that he never made any promises regarding the sentence that would be imposed, since it was up to the judge's discretion to impose sentence upon appellant. Appellant and his girlfriend testified at this hearing and, contrary to trial counsel's testimony, they testified that trial counsel told them that appellant would not get more than six years incarceration when accepting the plea deal.

{¶ 16} The court denied appellant's motion and the judgment was journalized April 22, 2016. Appellant now appeals.

7.

*Anders* **Brief**

{¶ 17} On April 12, 2017, appellant's counsel for this appeal filed a request to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel asserted, after thoroughly reviewing the transcript of proceedings in the trial court and the applicable case law, no meritorious assignments of error could be presented. Counsel did submit two potential assignments of error claiming that trial counsel may have been ineffective and that the trial court may have erred in denying appellant's motion to withdraw his plea. The state filed a response brief on May 1, 2017, in which it agreed with appellant's counsel and urged this court to find no error and permit counsel to withdraw.

{¶ 18} The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*, as well as *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978). In *Anders*, the U.S. Supreme Court found if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Anders* at 744. This request must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id*. In addition, counsel must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters the client so chooses. *Id*. Once the requirements are fulfilled, the appellate court must conduct a full examination of the proceedings and decide if the appeal is indeed frivolous. *Id*. If the appellate court

8.

determines the arguments are frivolous, it may grant counsel's request to withdraw and dismiss the appeal or it may proceed to a decision on the merits. *Id.*

{¶ 19} Here, appellant's counsel satisfied the requirements set forth in *Anders*. Appellant has filed a pro se brief and responded to counsel's request to withdraw by asserting that there is indeed a meritorious claim based on his plea not being entered into knowingly, voluntarily, and intelligently. Accordingly, we shall proceed with review of the possible errors set forth by appellant and counsel, as well as the entire record below, to determine if the appeal lacks merit and is, therefore, wholly frivolous.

### Ineffective Assistance of Counsel

{¶ 20} In evaluating ineffective assistance of counsel claims, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus; *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). To show prejudice, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

9.

{¶ 21} Here, appellant's ineffective assistance claim is based on his trial counsel allegedly misinforming him of the sentence to be imposed. Nevertheless, there is no credible basis in the record to support that trial counsel stated with 100 percent certainty what sentence the court would impose. To the contrary we find that trial counsel may have stated six years as an estimation of a potential sentence, but that there is no credible evidence that he represented that possibility as the court's final sentence.

{¶ 22} Appellant confirmed for the court that no one, obviously including trial counsel, made any promises with regard to the sentence to be imposed. Appellant was actually made aware of the potential, maximum sentence of 13.5 years incarceration, and appellant even implied while speaking to the court at sentencing that "seven" years in the penitentiary would hinder his development.

{¶ 23} Further in terms of effective assistance, trial counsel requested and obtained discovery, and advised appellant to accept the plea deal as opposed to facing roughly 30 years incarceration. By doing so appellant was only sentenced to 12 years, despite the prosecution's substantial incriminating evidence, including eyewitness testimony and confessions by appellant. Trial counsel moved for and was granted numerous continuances to allow his client to cooperate with authorities. And lastly, trial counsel advocated for his client to be recognized as a changed man prior to being sentenced, which was undoubtedly in an effort to introduce mitigating circumstances on behalf of his client.

10.

{¶ 24} Based on our review, we cannot say that counsel was ineffective in defending appellant, and thus there is no merit to this potential assignment of error.

**Motion to Withdraw a Plea**

{¶ 25} A motion to withdraw a guilty plea is governed by Crim.R. 32.1, which provides: "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." *State v. Rencz*, 6th Dist. Sandusky No. S-16-001, 2016-Ohio-4585, ¶ 6.

{¶ 26} "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. The decision of whether manifest injustice occurred is left to the sound discretion of the trial court. *Id.* at paragraph two of the syllabus.

{¶ 27} Absent an abuse of discretion, an appellate court will not reverse a trial court's denial of a motion to withdraw a guilty plea. *State v. Nathan*, 99 Ohio App.3d 722, 725, 651 N.E.2d 1044 (3d Dist.1995). An "abuse of discretion" connotes that the trial court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 28} Here, as articulated above, appellant claims his plea was not entered into knowingly, voluntarily and intelligently because his counsel allegedly lied stating that appellant would not be sentenced to a prison term beyond six years.

11.

{¶ 29} First, the written plea agreement unambiguously reveals appellant's potential prison term of 9 years and 54 months (13.5 years). Appellant confirmed for the court that he could read and write, and that he went over the agreement with his then counsel. The judge, prosecutor, trial counsel and appellant all signed the agreement.

{¶ 30} Further, the transcripts of the plea and sentencing hearings reveal trial counsel and the judge advised appellant of his constitutional rights, including his right to jury trial, to confront witnesses, to have compulsory process, to no self-incrimination, and to require proof of the crimes beyond a reasonable doubt. Appellant entered the guilty plea by his own free will and choice, and no one threatened or "made any promises" regarding the court's eventual sentence. The court repeatedly made statements regarding the maximum prison term, and even questioned appellant to confirm his understanding of the potential term. As stated above, the record reveals at sentencing appellant actually voluntarily stated that "seven" years incarceration would be detrimental to his development. This belies appellant's claim that he relied on any promise to be sentenced to six years.

{¶ 31} Based on our review, appellant was not precluded from entering a knowing, voluntary plea, nor was there manifest injustice by the trial court for us to deem its actions an abuse of discretion. We hold the court did not err in denying the withdrawal of appellant's plea, and thus we find no merit to this potential assignment of error.

12.

**Frivolousness of Appeal**

{¶ 32} Last is our examination of the record to determine whether this appeal is wholly frivolous. *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. Review of the record below, including the written plea agreement, filings in the trial court, transcripts of the plea hearing, sentencing hearing and motion to withdraw plea hearing, and appellant's PSI, reveals no errors by the trial court that would justify reversal of the judgment. We find this appeal to be wholly frivolous, and counsel's request to withdraw is found well-taken and is granted.

**Conclusion**

{¶ 33} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. The clerk is ordered to serve all parties, including the defendant if he has filed a brief, with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

13.

Arlene Singer, J.                                   _____

                                                 JUDGE

Thomas J. Osowik, J.

                                   _____

James D. Jensen, P.J.                                 JUDGE

CONCUR.

                                   _____

                                                 JUDGE